Claire E. **BAILEY**, Appellant,

v.

D. R. (Tom) **POLSTER** et al., Appellees.

No. 17647.

Court of Civil Appeals of Texas, Dallas.

May 14, 1971.

Rehearing Denied June 18, 1971.

Bruce Youngblood, Blanchette, Shelton & James, Dallas, for appellant.

George W. Bramblett, Jr., Robert H. Frost, Akin, Vial, Hamilton, Koch & Tubb, Dallas, for appellees.

BATEMAN, Justice.

This is a suit to enforce the terms of a compromise settlement of bodily injury and

property damage claims. Thomas and Doris Peterson and their minor son Vincent were injured and their automobile damaged in a collision with an automobile owned and operated by one Eddie Thomas, Jr. The appellee Commercial Standard Insurance Company (herein called Commercial Standard) was notified and, acting under the mistaken belief that it had insured Eddie Thomas, Jr. against such liability, negotiated a settlement of the claim with the appellant Claire E. Bailey, the attorney representing the Petersons, whereunder they would release Thomas and surrender their damaged automobile, free of lien, to Commercial Standard in exchange for that company's two drafts totaling $5,150 payable to the Petersons and their attorney, Bailey.

The Petersons endorsed the drafts and Bailey deposited them in his bank account, issuing his checks covering the $1,910 mortgage lien on the car, certain costs and expenses incurred in the handling of the claim and a check to the Petersons for $1,615 for their share of the settlement. The releases and the car were delivered to Commercial Standard. Thereafter, Commercial Standard discovered that it had not insured Eddie Thomas, Jr. or his car and stopped payment on its drafts.

Bailey sued Commercial Standard, its claims manager, Paul A. Mattison, and two independent adjusters (L. E. Marshall and his employee, D. R. (Tom) Polster) for breach of contract and punitive damages. At the conclusion of a nonjury trial, the court awarded appellant judgment against Commercial Standard alone for $3,525 representing the amounts actually paid by him to his clients and the holder of the lien on their car. Bailey appeals because of the failure of the court to render judgment for the full amount of the drafts and the denial of exemplary damages.

The trial court concluded that there was no liability for breach of contract because there was no consideration for the drafts,

but that Commercial Standard was negligent and for that reason liable to Bailey for the amount of his actual injury; i. e., the amounts paid out by him on the strength of the drafts. Recovery of any part of the attorney's fee which the Petersons had agreed to pay Bailey, and his expenses, was denied because the reasonableness thereof had not been proved.

■ By his first four points of error on appeal the appellant says the trial court erred in concluding that there was no consideration for the drafts, and in reducing the damages to $3,525. We agree with appellant. Using the forms prepared by Commercial Standard, the Petersons gave valid releases of their claims for bodily injuries and property damage; they delivered their damaged automobile, free of encumbrance, and Commercial Standard has sold it. The Petersons and their attorney, not being aware of Commercial Standard's coverage problem and its unilateral mistake in connection therewith, have done everything they agreed to do in connection with the compromise settlement, and the insurance company will not under these circumstances be heard to deny liability on its drafts on the ground "no consideration". Liberty Mutual Insurance Co. v. Martinez, 407 S.W.2d 272 (Tex.Civ.App., El Paso 1966, no writ).

■ Commercial Standard is not entitled to the equitable relief of rescission, whether the mistake be considered mutual, as it alleges, or unilateral. If it be considered that it was mutual in that both sides mistakenly thought Commercial Standard had issued a policy which covered Thomas' liability, the mistake of Bailey and his clients was due wholly to the representations of Commercial Standard and its agents, and Commercial Standard's mistake was due wholly to its own lack of care and failure to exercise reasonable diligence. As said in 10 Tex.Jur.2d, Cancellation of Instruments, § 37, pp. 359–360:

"In other words, if the evidence shows that the ignorance or mistake of fact is chargeable only to the mistaken party's own improvidence or inattention to his affairs, and if it appears that the facts of which he was ignorant were peculiarly within his own knowledge, his ignorance may not then be considered to be a proper ground for cancellation."

Moreover, Commercial Standard has voluntarily put itself in the position of not being able to restore Bailey and his clients to their former position. To do so is said to be a condition precedent to the granting of relief by way of cancellation. 10 Tex. Jur.2d Cancellation of Instruments, § 45, p. 372. Commercial Standard has sold the Petersons' automobile and cannot return it to them. By their "First Supplemental Answer" the appellees alleged they sold the car for $637.50 and in the pleading tendered that amount to Bailey and his clients, but there is no evidence to show that that amount represented the true value of the car. Moreover, the releases were never returned or tendered.

The modern trend of the authorities is to grant equitable relief against a unilateral mistake under certain conditions. One of these is that the mistake must have been made regardless of the exercise of ordinary care. Another is that by rescission the parties may be placed in status quo; i. e., the rescission must not result in prejudice to the other party except for the loss of his bargain. James T. Taylor, etc. v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371, 373 (1960); Benson v. Travelers Ins. Co., 464 S.W.2d 709 (Tex. Civ.App., Dallas 1971, no writ). Neither of these conditions has been met in the case before us.

Therefore, whether the mistake be considered mutual or unilateral, Commercial Standard does not show itself entitled to the rescission.

We think the case was decided on the wrong theory. The trial court denied Bailey any relief on the contract theory, but decided it on the alternate theory that Commercial Standard had been guilty of negligence, awarding Bailey only those damages which he actually proved.

As we see it, this was a simple case on contract. Commercial Standard contracted to pay Bailey and his clients $5,150 in exchange for certain releases and the unencumbered damaged automobile. Bailey and his clients performed their part of the bargain, and Commercial Standard is therefore indebted to Bailey, who has in the meantime acquired the rights of his clients, for the agreed sum of $5,150. Commercial Standard cannot avoid its contract by pleading its own negligent improvidence or inattention to its affairs.

Therefore, appellant's first four points of error on appeal are sustained.

By his fifth point of error appellant complains of the trial court's refusal to make findings of fact on issues of fraud and exemplary damages. We do not agree with appellant. We have carefully read the entire statement of facts and the cases cited by appellant under this point and fail to see this as a case involving a malicious or wanton tort. Consequently, we hold there is no liability for exemplary damages. The fifth point of error is overruled.

By his Points of Error Nos. 6, 7, 8 and 9, Bailey contends that Commercial Standard and its claims manager, Paul A. Mattison, are liable to him on the drafts themselves under the provisions of Texas Business and Commerce Code.

The liability of Commercial Standard, we think, is clear. It negotiated the settlement through its duly authorized agents, and authorized performance of its contract by instructing its claims manager to issue the drafts. Bailey and his clients accepted this performance and took the drafts in good faith, and upon endorsement thereof by the Petersons Mr. Bailey became the holder in due course thereof. V.T.C.A.,

Bus. & C., § 3.302(a) and (b). Bailey's sixth and seventh points of error complain of the trial court's holding that Commercial Standard was not liable as the *drawer* of the drafts. Mattison's physical act in drawing them is the legal equivalent of the act of Commercial Standard. Alex Woldert Co. v. Citizens' Bank, 234 S.W. 124, 126 (Tex.Civ.App., Texarkana 1921, writ dism'd).

Even though the drafts read, "Upon Acceptance Pay to the Order of," etc., under the circumstances of this case, and since Mattison had unquestioned authority to pay these claims by using this particular form of draft, this was a case of Commercial Standard drawing drafts on itself and the mere words "Upon Acceptance" did not give it the right to stop payment and thus rescind the contract, the other party having fully performed his part of it, without showing a right to rescind under principles of equity. In other words, it had no greater right to stop payment of these drafts than it would have had the right to stop payment of checks if that had been the mode of payment authorized and utilized. Since Commercial Standard was the drawer as well as drawee of the drafts, in its capacity of drawer it engaged that the drafts would be paid. V.T.C.A., Bus. & C., § 3.413(b).

These points (6 and 7) are therefore sustained.

■ The charge against Mattison, however, presents a different question. As stated, his authority to draw the drafts is undisputed. It is also true that he signed them as the ostensible drawer without anything under his signature to indicate the capacity in which he was acting.

"The general rule is that, when an agent, acting within the scope of his authority, enters into a contract for a disclosed principal, such agent does not become personally liable upon the contract, in the absence of an agreement so to be." Redden v. Capps, 15 S.W.2d 670, 671 (Tex.Civ.App., El Paso 1929, no writ).

Other cases announcing this rule are Foster v. Hackworth, 164 S.W.2d 796 (Tex. Civ.App., Austin 1942, no writ); Synatzske v. Gorham, 211 S.W.2d 391 (Tex. Civ.App., Austin 1948, no writ); and Dallas Farm Machinery Co. v. Minneapolis-Moline Co., 324 S.W.2d 578 (Tex.Civ.App., Dallas 1959, no writ).

The question, therefore, is whether the above general rule shall control or whether Mattison's liability is determined by the statutory provisions* setting forth the engagement of the drawer of a draft that it will be paid, and accepted if acceptance is necessary prior to payment. These are discussed in 9 Tex.Jur.2d, Bills and Notes, § 227, p. 245.

We hold that this phase of the case is controlled by the above quoted general rule.

We do not think the said statutory provisions were intended by the legislature to fix personal liability on an employee of an insurance company who is hired to pay approved claims against it, by whatever method his employer shall prescribe, whether by check, draft, currency, or other medium of exchange. The true relationship between the parties was clearly shown by undisputed evidence. Bailey knew that Mattison was acting in a representative capacity in signing the drafts, and his knowledge in this respect could not have been made more certain if Mattison had written the words, "Claims Manager," "Agent" or "Without Recourse" under his signature.

Equity would be quick to relieve against the harsh result of applying those statutory provisions literally to a situation like this and imposing any part of the insurance company's liability on its salaried em-

* V.T.C.A., Bus. & C., §§ 3.403, 3.413(b) and 3.507(a) (1).

**110**

ployee. While we find no cases directly in point, we feel that the following support our decision in principle: Traynham v. Jackson, 15 Tex. 170 (1855); Texas Land & Cattle Co. v. Carroll & Iler, 63 Tex. 48 (1885); First State Bank of Denton v. Smoot-Curtis Co., 121 S.W.2d 667 (Tex. Civ.App., Fort Worth 1938, writ dism'd agr.); Pollin v. Mindy Mfg. Co., 211 Pa. Super. 87, 236 A.2d 542 (1967); Pittsburgh Nat. Bank v. Kemilworth Restaurant Co., 202 Pa.Super. 238, 195 A.2d 919 (1963); Norman v. Beling, 33 N.J. 237, 163 A.2d 129 (1960).

Accordingly, we overrule Points of Error 8 and 9.

■ Under his Points of Error 10 through 13, Bailey complains of the trial court's holdings that Polster (the adjuster employed by L. E. Marshall, an independent adjuster to whose firm Mattison had assigned the claim for investigation and possible settlement) was not liable because of his misrepresentation that Commercial Standard had outstanding a policy which covered the claim. He also presents that Marshall was liable for Polster's deceit under the doctrine of *respondeat superior*. We find in the record no evidence to support these contentions. The representations of coverage made by these men were innocently made, based wholly on information furnished them by Commercial Standard, their disclosed principal, and were in our opinion not actionable. Dr. Salsbury's Laboratories v. Bell, 386 S.W.2d 341, 343 (Tex.Civ.App., Dallas 1965, writ dism'd). Points 10 through 13 are overruled.

The judgment appealed from is reformed to increase the principal amount of the judgment in favor of Bailey against the appellee Commercial Standard Insurance Company from $3,525 to $5,150. The judgment is in all other respects affirmed. All costs are taxed against the appellee Commercial Standard Insurance Company.

Reformed and affirmed.