**Robert C. SINGER, Appellant,**

v.

**ST. PAUL MERCURY INSURANCE COMPANY, Appellee.**

No. 15039.

Court of Civil Appeals of Texas, San Antonio.

March 15, 1972.

Rehearing Denied April 12, 1972.

**580**

Wiley, Plunkett, Gibson & Allen, San Antonio, for appellant.

Paul M. Green, Lang, Cross, Ladon, Boldrick & Green, San Antonio, for appellee.

KLINGEMAN, Justice.

Plaintiff, Robert C. Singer, sued defendant, St. Paul Mercury Insurance Co., upon a policy of fire insurance, either as written or as reformed by the court, for an alleged $3,700.00 loss to a building. In the alternative, he sought to recover $2,500.00 by an alleged compromise settlement and accord and satisfaction of his claim under such policy. The trial was to the court which rendered judgment for plaintiff in the sum of $500.00, from which judgment both parties have appealed. Findings of fact and conclusions of law were made by the trial court.[1]

Appellant was the holder of a Texas Standard Insurance Policy with defendant, St. Paul Mercury Insurance Company. The only property described in such policy is a brick building listed as located at 521–533 Meerscheidt Street, San Antonio,

1. *Findings of Fact:* (1) The structure which was burned was an old frame vacant out-building, completely disconnected from and not physically contiguous to the primary brick building, except for a single electric cord from the primary building to the burned structure which cord was not charged with electricity.

(2) Allen Menger was a duly authorized agent for plaintiff, and in addition, was an officer of Travis Savings & Loan Ass'n, which held a mortgage on the property described in the policy as 521–533 Meerscheidt Street.

(3) Plaintiff, having had his fire insurance on the premises cancelled by the Rubiola Agency, asked Menger to get coverage and to insure said premises just as the Rubiola Agency had done. Mr. Menger inspected the premises and wrote or caused to be written the present policy specifically naming the brick building and its uses, to-wit: pet supplies, washateria vacant, fixture storage, beer parlor and pool hall; but not naming or including the structure in question.

(4) The maximum value of the burned structure was $500.00 immediately prior to the fire in question.

(5) Mr. Bilikas, an adjuster for defendant, agreed to settle plaintiff's claim for $2,500.00 under the mistaken belief that the structure was covered under the "Dwelling Extension" clause of the policy.

(6) Mr. Farrell, claims manager of the company, issued a draft on the company in payment of the $2,500.00, which sum was never paid as the company's officer discovered the error and through Mr. Bilikas notified plaintiff that the $2,500.00 draft would not be paid as the structure was not covered by the policy.

*Conclusions of Law:* (1) The language of the policy in question is not ambiguous.

(2) The structure in question was not covered by the previous policy written by Rubiola Agency, and was not covered by the policy in question.

(3) The action of Mr. Bilikas and Mr. Farrell in agreeing to settle the claim of Mr. Singer for $2,500.00 in the mistaken belief that the dwelling extension clause was applicable was not binding on the St. Paul Mercury Insurance Company, and was not an accord or satisfaction.

(4) The trial court confesses error in its judgment awarding plaintiff $500.00 damage and admits it should have denied him any recovery at all.

Texas, with the amount of coverage being $25,000.00. While the policy was in effect, a frame building which was located to the rear of the brick building, about 10 to 12 feet from the rear of such building, was destroyed by fire. Defendant was notified of such fire and an insurance adjuster trainee, Mr. Bilikas, for Cravens, Dargan & Company, managing agent for a group of insurance companies including defendant, was assigned to handle such claim. Mr. Bilikas had worked for such company for approximately a year, and had handled only one previous claim, and no claims covering commercial structures. He testified that after looking at the burned structure, he noticed that it was unattached from the building, and that he assumed that it was covered under the "Dwelling Extension" [2] provision of such policy. He therefore suggested that plaintiff obtain estimates as to the cost of repairs for such burned structure. Plaintiff obtained bids or estimates, all of which were in excess of $2,500.00. Acting under the mistaken belief that there was coverage to the extent of $2,500.00, such adjuster prepared a proof of loss for such amount and plaintiff signed such proof of loss. A few days later, a draft payable to plaintiff in the amount of $2,500.00 drawn on defendant and signed by W. T. Farrell, claims manager for Cravens, Dargan & Co., was sent to plaintiff. Prior to the time that plaintiff took such draft to his bank, he was called by such adjuster and notified not to cash the draft, and that it would not be paid. Farrell testified that this was done due to the fact that in auditing the file, they realized there was coverage to out-buildings only if the insurance is on a residential structure.

Plaintiff in the trial court sought recovery on three grounds: (1) recovery on the

policy as written in the amount of $3,-700.00; (2) recovery on the policy as reformed in the amount of $3,700.00; and (3) recovery on the ground of compromise settlement and accord and satisfaction in the amount of $2,500.00. However, on this appeal plaintiff has abandoned the first two theories of recovery, and on this appeal he asserts that he is entitled to recover the sum of $2,500.00 by virtue of two contracts: (1) the written draft; and (2) the oral contract of compromise and settlement.

Plaintiff asserts by six points of error that the trial court erred: (a) in not granting judgment for plaintiff in the sum of $2,500.00 because as a matter of law defendant became obligated to pay such amount by issuing its written draft; (b) in not holding there was a compromise and settlement of the insurance claim in the amount of $2,500.00; (c) in not holding that under the record there was a valid accord and satisfaction; (d) in granting a recission of the contract because such was not supported by either pleadings or evidence; and (e) in not rendering judgment for plaintiff in the sum of $2,500.00 under the written draft and promise to pay because defendant cannot avoid its contract by pleading its own negligent improvidence or inattention to its own affairs.

Defendant cites Hodges Food Stores, Inc. v. Gulf Insurance Co., 441 S.W.2d 309 (Tex.Civ.App.—Dallas 1969, no writ), as being directly in point. In *Hodges*, Gulf had issued to Hodges its Texas Standard Form Burglary Policy, containing provisions for coverage of safe burglaries, but expressly providing that such insurance was not effective unless entry thereto was shown to have been made by actual force and violence being demonstrable by visible

2. "Dwelling Extension—At the option of the insured, insurance on a dwelling may be extended as excess insurance to the fences, drives, walks, yard fixtures, private garages, servants' houses, and, if used solely in connection with the occupancy thereof, other out-buildings on the premises of the dwelling, to the extent of their respective actual values, but the aggregate of such extension shall not exceed 10% of the amount of insurance on such dwelling. In the application of this Dwelling Extension, boarding, rooming, fraternity and sorority houses, and apartment buildings (containing not more than eight separate apartments) may be considered as dwellings."

marks. A burglary occurred at a Hodges store and a safe in the store had been opened, and contents valued at approximately $14,000.00 taken. However, there were no marks or other signs of forceable entry to the safe. The maximum amount of recovery was $7,500.00. One of Gulf's adjusters made an investigation and told the Hodges manager, " 'It looks like we owe you seventy-five hundred.' " 441 S.W.2d at 310. The manager testified that there was no dispute between the parties, and that both the adjuster and he thought there was coverage under the policy for the loss. Such adjuster prepared a draft on Gulf in the sum of $7,500.00 payable to Hodges, and transmitted the same to Hodges. In the meantime, it was discovered that the policy did not cover the loss, and the adjuster telephoned Hodges and informed the manager of the mistake. Hodges deposited the draft and when it was presented, Gulf refused to honor it. Hodges brought suit on the policy itself, and in the alternative, upon the agreement to settle. Gulf defended on the ground that there was no coverage, mutual mistake, and no consideration for any agreement to pay the sum of $7,500.00. A take-nothing judgment was entered following a jury trial. The Court of Civil Appeals affirmed the judgment, holding that where the insurance adjuster, proceeding under a mistake of fact concerning insurance coverage, agreed to pay the maximum policy limits, and the insured also proceeding on a mistake of fact concerning insurance coverage, agreed to accept the maximum policy limits, the amount promised by the adjuster was never legally due and payable, and could not be recovered by the insured. The Court stated that there was no consideration for such agreement, and that there was no compromise and settlement or accord and satisfaction.

Plaintiff relies on the case of Bailey v. Polster, 468 S.W.2d 105 (Tex.Civ.App.— Dallas 1971, writ ref'd n. r. e.), and says it is controlling. Bailey was an attorney representing clients holding bodily injury and damage claims against a person named Thomas. Polster was an insurance adjuster representing Commercial Standard Insurance Co. Acting on a mistaken belief that it had provided automobile liability coverage to Thomas, Commercial Standard instructed Polster to negotiate a settlement with Bailey. He did so, and as a result issued drafts totaling $5,150.00, payable to Bailey and his clients. In exchange, Commercial Standard obtained release of the claims, including Bailey's contingent interest, and the insured automobile free of lien, which it sold for $637.50. Bailey deposited the drafts and issued checks to the lien holder of such automobile and to his clients in the aggregate of $3,525.00. Commercial Standard discovered that it did not have coverage on Thomas and stopped payment on the drafts. The Court of Civil Appeals held that Bailey was entitled to recover the full amount of such drafts, to-wit $5,150.00, holding where the mistake, if any, of injured parties and their attorney in believing that insurer had issued policy covering tort feasor's liability was due wholly to representations of insurer and its agents, and insurer's mistake was due wholly to its own lack of care and failure to exercise reasonable diligence, insurer which, pursuant to settlement agreement with injured parties, received parties' damaged automobile, free of encumbrance, and sold it, thereby placing itself in position of not being able to restore parties to their former position, was not entitled to rescission of settlement agreement, whether mistake be considered mutual or unilateral.[3]

*Bailey* is distinguishable from *Hodges* and the case before us in several important

3. The Court stated: "As we see it, this was a simple case on contract. Commercial Standard contracted to pay Bailey and his clients $5,150 in exchange for certain releases and the unencumbered damaged automobile. Bailey and his clients performed their part of the bargain, and Commercial Standard is therefore indebted to Bailey, who has in the meantime acquired the rights of his clients, for the agreed sum of $5,150. Commercial Standard cannot avoid its contract by pleading its own negligent improvidence or inattention to its affairs." 468 S.W.2d at 108.

respects: (1) Bailey was not the policy holder, and in his suit Bailey sued to enforce the terms of a compromise settlement and agreement; (2) Bailey and his clients relied on the settlement to their detriment, Bailey having paid off debts in the amount of $1,910.00, and having delivered the damaged automobile to Commercial Standard; and (3) Commercial Standard was unable to restore the status quo between the parties, having sold the automobile.[4]

In the case before us there is neither pleading nor proof that the promise to pay the $2,500.00 was relied upon by plaintiff to his detriment, and the status quo between the parties was unaltered by the payment being stopped on the draft.

■ We think the principal of law applicable to this case is found in those cases where the insurance company is attempting to recoup payments made by mistake to the insured. See 167 A.L.R., Anno.—Insurance Paid Under Mistake, p. 472, where it is stated: "An insurer who made a payment under an erroneous belief induced by a mistake of fact that the terms of the insurance contract required such payment is entitled to restitution from the payee."

■ The rationale of the rule is that money paid to another under the influence of a mistake of fact belongs in equity and good conscience to the person who paid it. 40 Am.Jur., Payment—Mistake of Fact, § 187; Pilot Life Ins. Co. v. Cudd, 208 S.C. 6, 36 S.E.2d 860 (1945); Davis v. Gonzales, 235 S.W.2d 221 (Tex.Civ.App.—Fort Worth 1950, writ dism'd); Prigmore v. Hardware Mutual Ins. Co. of Minn., 225 S.W.2d 897 (Tex.Civ.App.—Amarillo 1949, no writ).

The record does not support a recovery by plaintiff by an accord or satisfaction. We think Hodges Food Stores, Inc. v. Gulf Insurance Co., supra, is controlling in this case and hold that plaintiff is not entitled to recover either on the written draft or on the purported oral contract of compromise and settlement.

Defendant by cross-point asserts that the findings of fact and conclusions of law establish and the trial court now concedes that judgment should have been rendered that plaintiff take nothing. For the reasons heretofore set forth, we hold that judgment should have been rendered that plaintiff take nothing, and defendant's cross-point is sustained.

The judgment of the trial court is reversed and judgment here rendered that plaintiff take nothing.

BARROW, C. J., not participating.

---

4. In Bailey v. Polster, supra, the Court stated: "Moreover, Commercial Standard has voluntarily put itself in the position of not being able to restore Bailey and his clients to their former position. To do so is said to be a condition precedent to the granting of relief by way of cancellation. 10 Tex.Jur.2d Cancellation of Instruments, § 45, p. 372. Commercial Standard has sold the Petersons' automobile and cannot return it to them. By their 'First Supplemental Answer' the appellees alleged they sold the car for $637.-50 and in the pleading tendered that amount to Bailey and his clients, but there is no evidence to show that that amount represented the true value of the car. Moreover, the releases were never returned or tendered." 468 S.W.2d at 108.