# IN THE SUPREME COURT OF TEXAS

═══════════

No. 12-0452

═══════════

GOTHAM INSURANCE COMPANY, PETITIONER,

v.

WARREN E&P, INC. F/K/A PETROLEUM DEVELOPMENT CORPORATION D/B/A
PEDECO, INC., WARREN RESOURCES, INC., AND OIL TECHNOLOGY FUND 1996 -
SERIES D, L.P., RESPONDENTS

══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS
══════════════════════════════════════════════

**Argued November 8, 2013**

JUSTICE GUZMAN delivered the opinion of the Court.

This is an insurance coverage dispute concerning an oil well that blew out and caught fire. The parties have previously appealed on three separate occasions to the court of appeals, and this is the first time we have granted review. Though the parties raise a number of issues related to equity and contract claims, the crux of our analysis is determining the proper role of equity claims when a contractual provision addresses the matter in dispute. Here, the insured obtained an insurance policy to reimburse its expenses in regaining control of an oil well in the event of a blowout. When the well blew out, the insured represented to the insurer that it owned a 100% working interest in the well and the insurer paid claims accordingly. But a later-discovered joint operating agreement reflected that the insured might have possessed less than a 100% working

interest in the well. The insurer sued for a return of its payments under breach of contract and equity theories.

In the first two appeals, the court of appeals held that summary judgment in favor of the insurer was proper on its equity claims. The third appeal was transferred to a different court of appeals under docket equalization procedures. That court of appeals overturned the prior rulings, concluding that under *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*,[1] the insurer had no equitable right to reimbursement. We agree with the court of appeals that the insurer may not proceed on its equity claims but for different reasons. We held in *Fortis Benefits v. Cantu* that an insurer is limited to contractual claims when the policy addresses the matter at issue.[2] There, we held that an insurer is limited to contractual claims when the policy addresses the matter at issue. Here, this policy contains several clauses addressing misrepresentations, reporting, salvage and recoveries, subrogation, and due diligence. Thus, because the insurance contract addresses the insured's conduct, we hold that the insurer cannot rely on its equity claims. We therefore reverse the judgment of the court of appeals and remand to that court to address the contract claims.

## I. Background

The factual and procedural background surrounding this appeal is complex. The underlying suit involves the Halff-Oppenheimer No. 1 oil well (the H&O Well) in Frio County, which blew out and caught fire in 1997. Pedeco, Inc., now known as Warren E&P, Inc. (Pedeco), entered into a

---

[1] 246 S.W.3d 42 (Tex. 2008).

[2] 234 S.W.3d 642 (Tex. 2007).

2

joint venture with Warren Resources, Inc. (WRI) and Oil Technology Fund 1996—Series D, L.P. (the Fund) in 1992 to drill a series of wells that included the H&O Well.  In 1996, Pedeco, WRI, and the Fund entered into a joint operating agreement that covered a number of wells, including the H&O Well, once the wells went into production.  The operating agreement designated Pedeco as the operator and indicated Pedeco and WRI would each possess 12.5% cost-bearing working interests while the Fund would possess the remaining 75% interest.[3]  After receiving a drilling permit, Pedeco began drilling the H&O Well in July 1997. During the drilling process, the rig lost circulation pressure, formation gas rose to the surface, the blowout preventer failed, and the gas ignited.

Pedeco was insured under a policy by Gotham Insurance Company (Gotham) to reimburse Pedeco for actual expenses in regaining or attempting to regain control of the well.  The policy covered Pedeco to the extent of its working interest in the well.[4]  Pedeco notified Gotham of the loss and represented it was the sole operator and held a 100% working interest in the well.  Gotham requested all turnkey contracts,[5] joint operating agreements, and other documents regarding the claim.  Pedeco sent a handwritten response from its insuring agent that Pedeco was the operator for the well and subsequently sent sworn proofs of loss to Gotham that it held a 100% working interest.

---

[3] These allocations are for revenues received before payout. After the well reached payout, revenue was to be distributed 20% each to Pedeco and WRI and 60% to the Fund under the operating agreement.  Notwithstanding these revenue allocations, Pedeco and WRI remained obligated for drilling expenses.

[4] The primary insured on the policy was R.W. Dirks Petroleum Engineers, Inc., whom Pedeco contracted with to perform its duties before Pedeco became fully licensed in Texas.  Pedeco was named an additional insured for no additional premium on the representation that Pedeco was a non-operator.  The parties initially disputed the effect of that representation, which is not at issue in our disposition of this appeal.

[5] In this context, a turnkey contract is a contract by which an entity agrees to drill a well for a fixed price.  The record indicates WRI agreed to a turnkey contract with the Fund, and Pedeco agreed to a turnkey contract with WRI for a lower price.

3

WRI reimbursed Pedeco for its expenses in controlling the well, but WRI's CEO testified that under the arrangement between WRI and Pedeco, the two companies would share evenly in drilling profits and drilling losses in the aggregate at the end of each year. Gotham subsequently paid claims totaling over $1.8 million.

After issuing payment on the claim, in May 1998, Gotham discovered that several subcontractors providing services to Pedeco for the H&O Well had sued Pedeco for allegedly failing to use proper blowout prevention equipment. Gotham also obtained a copy of Pedeco's joint operating agreement from another source indicating Pedeco's interest was 12.5%. Gotham then inquired of Pedeco whether it had a 100% working interest in the well, as it previously reported, in light of the agreement. Pedeco responded that it held 100% of the equitable title to the well under a farmout agreement, was the sole performing party under the turnkey drilling agreements, would have full liability in the event of a blowout, and paid full premiums to Gotham for its full interest in the well.

Gotham ceased further payments under the claim and intervened in the existing lawsuit involving Pedeco and its subcontractors. Gotham alleged Pedeco breached the insurance policy by using improper blowout prevention equipment and making misrepresentations regarding its interest in the well. Gotham also added a claim for restitution and unjust enrichment against Pedeco for a return of its payments, and sued WRI and the Fund to recoup the portion of its payments that benefitted them under theories of restitution, unjust enrichment, and subrogation. Pedeco counterclaimed for breach, alleging that Gotham failed to pay sums due under the policy.

The parties were in the discovery phase of the underlying suit when we announced in *Texas Association of Counties County Government Risk Management Pool v. Matagorda County* that an insurer may not seek reimbursement from the insured in equity for settlement funds paid in the absence of a contractual right to do so. 52 S.W.3d 128, 133–36 (Tex. 2000).

In the trial court, Gotham, Pedeco, WRI, and the Fund all moved for summary judgment. In 2001, the trial court denied Gotham's motion for summary judgment and entered judgment in favor of Pedeco, WRI, and the Fund. In the first of three appeals, the court of appeals held Pedeco should take nothing on its contract counterclaim on the ground that it was not entitled to benefits under the policy because WRI reimbursed Pedeco, who thus suffered no loss. __ S.W.3d __, __ (*Gotham I*). The court of appeals further held that because Pedeco was not entitled to benefits, Gotham prevailed on its claims for restitution and unjust enrichment against Pedeco, WRI, and the Fund. *Id*. at __. The court reasoned that our holding in *Matagorda* (precluding equitable reimbursement for voluntary settlement of claims in litigation when the contract does not address such a right to recovery) did not apply because Gotham was not settling a claim in litigation on behalf of Pedeco. *Id*. at __. But the court remanded Gotham's restitution and unjust enrichment claims for a determination on the amount of damages because "the judgment that should have been rendered [wa]s not at all obvious." *Id*. at __.

On the first remand, the trial court awarded Gotham a judgment of over $1.8 million against Pedeco, WRI, and the Fund. In the second appeal, the court of appeals again reversed and remanded because the trial court failed to conduct further proceedings to determine the amount Gotham was entitled to under its restitution and unjust enrichment claims. __ S.W.3d __, __ (*Gotham II*).

5

In January 2010, the trial court again awarded Gotham judgment for over $1.8 million against Pedeco, WRI, and the Fund.[6] The third appeal was transferred under docket equalization procedures to a different court of appeals. 368 S.W.3d 633, 634 n.1 (*Gotham III*). After determining that *Frank's Casing* was a change in governing law, the court of appeals reconsidered *Gotham I* and *Gotham II* and held that Gotham was not entitled to any equitable right of reimbursement because it concluded that such a right does not exist in the insurance policy.[7] *Id.* at 638–39. We granted Gotham's petition for review.

## II. Discussion

We conclude that under *Fortis Benefits*, Gotham may not proceed on its equity claims because the policy addresses the matters in dispute. 234 S.W.3d at 648–49. Regarding Gotham's contract claim, we disagree with the court of appeals in *Gotham III* that the contract conclusively precludes Gotham's recovery. We hold that there is some evidence Pedeco breached the policy as alleged in Gotham's live pleading. Finally, we disagree with the *Gotham I* court of appeals' holding that because WRI reimbursed Pedeco's expenses in controlling the well, Pedeco suffered no loss. There is record evidence that WRI and Pedeco agreed to evenly share in the aggregate drilling profits and losses at the end of each calender year; therefore Gotham has not conclusively established that Pedeco suffered no loss.

---

[6] During the second remand, we issued *Frank's Casing*, where we declined to recognize an exception to the rule we announced in *Matagorda*. 246 S.W.3d at 43–44.

[7] The dissenting justice concluded that "*Frank's Casing* did not change the law" and did not allow the court to revisit the holding of *Gotham I*. 368 S.W.3d at 643 (Antcliffe, J., dissenting).

## A. Gotham's Equity Claims

The court of appeals in *Gotham III* concluded Gotham had no equitable right to reimbursement under *Frank's Casing*. 368 S.W.3d at 638–39. We agree that Gotham cannot proceed on its equity claims but for a different reason.[8]

In *Fortis Benefits*, we held that "[w]here a valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy." 234 S.W.3d at 648–49. At issue in *Fortis Benefits* was the equitable "made whole" doctrine that bars insurers from recovering through equitable subrogation if the insured's loss exceeds their recovery. *Id.* at 645. Without referencing the "made whole" doctrine, Fortis Benefits' insurance policy granted it the right to recover through subrogation against third parties or seek reimbursement from the insured. *Id.* at 651. We held that:

> We generally adhere to the maxim that "equity follows the law," which requires equitable doctrines to conform to contractual and statutory mandates, not the other way around. Where a valid contract prescribes particular remedies or imposes particular obligations, equity generally must yield unless the contract violates positive law or offends public policy.

---

[8] The *Gotham III* court revisited the holdings of the *Gotham I* and *Gotham II* courts. Under the law of the case doctrine, a court of appeals is ordinarily bound by its initial decision if there is a subsequent appeal in the same case; but a determination to revisit an earlier decision is within the discretion of the court under the particular circumstances of each case. *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012); *City of Houston v. Jackson*, 192 S.W.3d 764, 769 (Tex. 2006); *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). Regardless, the law of the case doctrine does not foreclose our consideration of legal questions properly before us for the first time. *Jackson*, 192 S.W.3d at 769. Therefore, we first assess the court's holding in *Gotham III* that Gotham may not proceed on its equity claims.

7

*Id*. at 648–49. Because the contractual provisions there did not violate positive law or offend public policy, we enforced the contractual provisions without subordinating them to the equitable "made whole" doctrine.[9] *Id*. at 649, 651.

Here, Gotham has argued that several clauses in the policy address its ability to recover from Pedeco and other parties for payments made based on Pedeco's purported failure to use due diligence in preventing the blowout and alleged misrepresentations regarding its interest in the well. First, the due diligence clause requires Pedeco to utilize a blowout preventer "in accordance with all regulations, requirements and normal and customary practices in the industry." Second, under the misrepresentation clause, if Pedeco makes material misrepresentations of fact concerning its interest or the subject of the insurance, one remedy is to allow Gotham to void the policy. Third, the salvage and recoveries clause operates to apply payments and recoveries received after settling a loss as if received before the loss. Fourth, the reporting clause requires Pedeco to semi-annually report to Gotham the status of all covered wells. And fifth, the subrogation clause grants Gotham the authority to pursue Pedeco's right to recover against other parties that may be liable for the loss.[10] As in *Fortis Benefits*, these clauses indicate that the contract addresses the matter at issue,

---

[9] We decided *Fortis Benefits* well after this lawsuit began, but we cannot say that *Fortis Benefits* announced a new rule of law. *See, e.g.*, *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000) (requiring a party opposing claim for unjust enrichment to secure findings "that an express contract exists that covers the subject matter of the dispute" (citing *Freeman v. Carroll*, 499 S.W.2d 668 (Tex. Civ. App.—Tyler 1973, writ ref'd n.r.e.)); *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) (discussing the general rule that one may recover in quantum meruit only when there is no express contract).

[10] Gotham's live pleading omitted its claim for contractual subrogation, but this does not negate the fact that the contract addresses the issue and bars Gotham from pursuing an equitable subrogation claim.

8

and Gotham is limited to the contract rather than equity when determining liability.[11]  *See id*. at 648–49.

Thus, Gotham is limited to its contractual claims unless the contractual provisions on which it relies violate positive law or offend public policy.  *Id*.  When conducting this inquiry, we bear in mind the strong public policy to preserve freedom of contract.  *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex. 2001).  Further, the public policy of the State is reflected in its statutes. *Fortis Benefits*, 234 S.W.3d at 649.  Thus, we will enforce the parties' bargain unless it contravenes some positive statute.  *Id*.

We held in *Fortis Benefits* that neither contractual subrogation nor reimbursement clauses[12] violate public policy.  234 S.W.3d at 649.  And we are aware of no statutes that limit the contractual subrogation or reimbursement clauses at issue here.[13]  Likewise, we are aware of no applicable statutes relating to the policy's reporting clause.  The due diligence clause requires Pedeco to comply with regulations and industry standards.  The Texas Railroad Commission, which regulates oil and gas drilling and production in Texas, promulgated Rule 36 to address blowout prevention equipment to be used in drilling hydrogen sulfide wells such as the H&O Well.  16 TEX. ADMIN. CODE. § 3.36.  A contractual clause requiring compliance with state regulations generally will not

---

[11] We cannot say, however, that it is appropriate to dismiss Gotham's equity claims against Pedeco, WRI, and the Fund at summary judgment.  Gotham's live pleading alleges that Pedeco's misrepresentations concerning its working interest could, among other remedies, operate to render the policy void.  If Gotham prevails on this theory and elects to void the policy, its equity claims might operate to secure a return of the approximately $1.8 million it paid under the claim.  Thus, it is premature to dismiss Gotham's equity claims against Pedeco, WRI, and the Fund.

[12] Gotham contends the salvage and recoveries clause functions as a reimbursement clause.

[13] The Legislature recently specified (with respect to contractual subrogation clauses in certain health insurance policies) the recovery insurers may obtain from a settlement between the insured and the responsible third party that caused the injury.  TEX. CIV. PRAC. & REM. CODE § 140.001 *et seq.*

9

offend public policy. *See Fortis Benefits*, 234 S.W.3d at 649 ("It is indeed difficult to declare something contrary to public policy when state law, both statutory and regulatory, actually suggests approval."); *see also Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 96 (Tex. 2011) (enforcing a contractual agreement when state law did not contravene the agreement).

The remaining clause is the misrepresentation clause. Section 705.003 of the Texas Insurance Code renders invalid insurance clauses that make policies void or voidable due to misrepresentations in proofs of loss unless it is shown at trial that the misrepresentation: (1) was fraudulently made; (2) misrepresented a fact material to the insurer's liability under the policy; and (3) misled the insurer into waiving or losing a valid defense to the policy. TEX. INS. CODE § 705.003.[14] In other words, public policy allows misrepresentation clauses to render insurance policies void or voidable only for fraudulent, material misrepresentations that mislead insurers into waiving or losing defenses. *Id.* Gotham's live pleading alleges that Pedeco "knowingly and wrongfully" reported it had a 100% working interest when it purportedly had no interest in the well, and that Gotham paid claims pursuant to the alleged misrepresentation. The parties do not dispute that Gotham issued payments based upon Pedeco's representation that it possessed a 100% working interest. But the record indicates there are genuine issues of material fact as to whether that representation was false and fraudulently made.[15] If Gotham proves its allegations to be true, the

---

[14] The precodified version of this law was in effect when the policy was signed and the suit was filed, but it is substantively similar to the present statute. Act of June 7, 1952, 52d Leg., R.S., ch. 491, § 1, sec. 21.19, 1951 Tex. Gen. Laws 868, 1075, *repealed by* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 26, 2003 Tex. Gen. Laws 3611, 4138.

[15] Regarding falsity, Pedeco indicates it held 100% of the working interests that were available under a farmout agreement with the George R. Brown Company. Gotham asserts that Pedeco would only earn a working interest on the completion of a successful well and also relies on a title opinion indicating WRI (not Pedeco) held the equitable title to the working interest. Regarding whether the representation was fraudulent, this is an inquiry typically left to the jury

10

misrepresentation clause does not violate public policy and Gotham is limited to its contract claim.[16]

In sum, because the policy addresses the matters at issue, Gotham may not proceed on its equity claim against Pedeco.

Gotham argues that even if it may not pursue its equity claim against Pedeco, it may still pursue its equity claim against WRI and the Fund because they passively received benefits that discharged their obligations. We disagree. The policy here addresses the matter of Gotham seeking a return of payments that benefitted others. Gotham does not claim that it paid sums directly to WRI and the Fund. Rather, it claims it made payments to Pedeco as well as through an escrow fund that directly paid third parties that performed services for Pedeco in regaining control of the well. Gotham contends these payments discharged WRI and the Fund's obligations as uninsured co-venturers. Assuming WRI and the Fund were not covered by Pedeco's policy with Gotham,[17] the salvage and recoveries clause and the subrogation clause address Gotham's ability to recover an overpayment that discharged WRI and the Fund's obligations. Gotham asserts that the salvage and recoveries clause allows Gotham to seek reimbursement from Pedeco for WRI's reimbursement of Pedeco's expenses in controlling the well. And if WRI and the Fund had made no such payments

as it often involves proof of intent by circumstantial evidence. *See Quinn v. Dupree*, 303 S.W.2d 769, 774 (Tex. 1957).

[16] If Gotham proves its allegations that Pedeco knowingly misrepresented its interest, the misrepresentation clause will not violate public policy and the clause could operate to, among other remedies, render the insurance policy void. If Gotham prevails on this theory and elects to void the policy, its equity claim might still allow Gotham to recover. For this reason, we do not affirm the dismissal of Gotham's equity claim against Pedeco at this stage of the proceeding.

[17] It is not entirely clear from the record whether WRI and the Fund were uninsured for the blowout. Pedeco's policy with Gotham applies to co-venturers if certain procedures are followed. The record does not indicate if those procedures were followed. If WRI and the Fund were covered under the policy, the policy addresses the matter and Gotham's equity claim against them is improper. As addressed below, if WRI and the Fund were not covered by the policy, the salvage and recoveries clause and the subrogation clause still address the matter.

11

(or if Pedeco returned them), the subrogation clause allows Gotham to pursue Pedeco's rights and seek recovery from responsible parties.[18] As addressed above, these clauses do not violate public policy. Because the policy addresses Gotham's right to recover from Pedeco or responsible third parties, Gotham may not proceed on its equity claims against Pedeco, WRI, or the Fund.[19]

## B. Gotham's Contract Claim

In addition to its equity claims, Gotham's live pleading contains a claim that Pedeco breached several clauses in the policy, entitling Gotham to recover its overpayment. Pedeco contends Gotham waived its contract claim by moving for entry of judgment only on its equity claims following the remands in *Gotham I* and *Gotham II*. The court of appeals in *Gotham III* concluded that Gotham's contract claim fails because there is no clause in this policy granting Gotham a right to reimbursement. 368 S.W.3d at 638. We disagree with Pedeco that Gotham waived its contract claim and remand for further proceedings.

## 1. Waiver

In *City of Austin v. Whittington*, we held that a party may raise an independent ground for obtaining the same relief awarded in the judgment as an issue on appeal rather than pursuing a cross-

---

[18] The subrogation clause provides that Gotham "shall upon reimbursement hereunder to [Pedeco] of any loss, damage or expense be subrogated to all [Pedeco's] rights of recovery against any other person, form or corporation who may be legally or contractually liable for such loss, damage or expense . . . ." That Gotham omitted its contractual subrogation claim in its live pleading does not alter the fact that the contract addresses the matter of subrogation. *See supra* note 10.

[19] Gotham claims in this Court that Pedeco made a false representation (that it was a non-operator) to obtain coverage under the policy and that this false statement negates the policy. But Gotham did not move for summary judgment on this ground in the trial court, and we need not consider it here. *See Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012).

appeal. 384 S.W.3d 766, 789 (Tex. 2012). Here, Gotham initially moved for summary judgment in the trial court on both its contract and equity claims. The court of appeals in *Gotham I* concluded that Gotham conclusively proved it was entitled to restitution. __ S.W.3d at __. On remand, Gotham moved for entry of judgment on its equity claims, and the trial court entered judgment in its favor. Ultimately, the court of appeals in *Gotham III* reversed, holding that Gotham was not entitled to any equitable right of reimbursement because it concluded such a right does not exist in the insurance policy. 368 S.W.3d at 638–39.

In this Court, Gotham contends that its contract claim is an alternate ground to its equity claims to uphold the trial court's judgment in its favor. Gotham has sought the same monetary relief (a return of payments made to or on behalf of Pedeco) under both its equity and contract claims. Because Gotham has raised on appeal its contract claim as an independent ground for the relief awarded in the trial court's judgment, it has not waived its contract claim. *Whittington*, 384 S.W.3d at 789**.**

## 2. *Gotham III*

Having determined Gotham did not waive its contract claim, we next address the court of appeals' holding in *Gotham III* that no contract provision allowed Gotham to recover. 368 S.W.3d at 638. Specifically, the court of appeals held without elaboration that "Pedeco's policy with Gotham did not provide for a right to reimbursement for payment of non-covered claims. Therefore, Gotham has no right to reimbursement from [Pedeco] for payment of the non-covered claims in question." *Id*. We disagree.

A reimbursement clause may operate to allow an insurer to recover payments previously made even if the insured did not breach the policy. *See Frank's Casing*, 246 S.W.3d at 43–45 (discussing right to reimbursement of settlement proceeds if it is later determined that coverage did not exist for reasons unrelated to an insured's breach). But the absence of a reimbursement clause does not necessarily foreclose an insurer's ability to recover if the insured has breached the policy. The insurer may still pursue a claim that the insured's breach proximately caused its damages, which is subject to any applicable defenses and affirmative defenses. As addressed above, this policy contains clauses requiring Pedeco to comply with all regulations, and potentially rendering the policy void if Pedeco made a material misrepresentation concerning its interest. Gotham's live pleading alleges that Pedeco breached these clauses by: (1) failing to use state-mandated blowout prevention equipment suitable for the well, and (2) misrepresenting its interest in the well. There is some evidence supporting both allegations. Regarding due diligence, there is evidence that Pedeco's drilling subcontractor violated Railroad Commission Rule 36 by using improper blowout prevention equipment, despite Pedeco's contractual obligation to comply with all regulations. Regarding misrepresentations, there is some evidence that Pedeco was drilling the well under a farmout agreement that would only grant Pedeco a working interest once it completed a successful well. Thus, there is some evidence that Pedeco breached the contract in the manner Gotham alleged.

In addition to proving breach, Gotham must also prove the breach proximately caused its damages[20] and must overcome any applicable defense or affirmative defense.[21] The parties' briefing

---

[20] If Gotham prevails on its due diligence theory, Gotham must prove Pedeco's alleged failure to use due diligence caused its damages. If Gotham prevails on its misrepresentation theory, Gotham could elect the remedy of voiding the policy and seek restitution of its payments under its equitable theories. *See supra* notes 11, 16. And as

14

before us and the *Gotham III* court of appeals fails to indicate that Gotham conclusively proved breach or damages or the conclusive application of a defense or affirmative defense. Therefore, we disagree with the court of appeals in *Gotham III* that there is no basis for Gotham's contract claims at this stage of the proceeding. *See* 368 S.W.3d at 638.

### 3. *Gotham I*

The only remaining holding regarding the contract claims in this trilogy of appeals is the court of appeals' holding in *Gotham I* that Pedeco suffered no loss because WRI reimbursed its expenses and was therefore not entitled to reimbursement under its indemnity insurance policy. __ S.W.3d at __. In light of our holding that Gotham may not pursue its equity claims, we may consider this prior holding regarding Gotham's contract claims, as Pedeco requests that we do. *See Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182–83 (Tex. 2012) (considering an issue raised in the first appeal after the petition from the third appeal); TEX. R. APP. P. 53.3(c)(2).[22]

In arriving at its conclusion that Pedeco suffered no loss because WRI reimbursed it, the only authority on which the court of appeals relied is our opinion from *Paramount Fire Insurance Co.*

---

addressed below, Gotham contends that regardless of the manner of Pedeco's breach, WRI reimbursed Pedeco's expenses and Pedeco thus suffered no loss for which insurance would reimburse it. As Gotham has yet to prevail on the liability aspect of its contract claim in this Court, we cannot yet assess the measure of recovery.

[21] For example, Pedeco raised in its motion for summary judgment that Gotham gave Pedeco no notice of its refusal to be bound by the policy within 90 days of learning full information regarding due diligence and Pedeco's working interest, as required by former article 21.17 of the Texas Insurance Code. *See* TEX. INS. CODE § 705.005. Other than the holding in *Gotham I* that Pedeco suffered no loss, *see infra* Part II.B.3, the parties' briefing here does not address any of the defenses they raised in *Gotham I*.

[22] Under docket equalization principles, our disposition of the issues in *Gotham III* indicates that we "stand[] in the shoes" of the *Gotham I* court of appeals and may consider its holdings that are challenged in this appeal. *See* TEX. R. APP. P. 41.3 cmt.

15

*v. Aetna Casualty & Surety Co.*, 353 S.W.2d 841, 844–45 (Tex. 1962), where we held that an insured seller of a home that caught fire before closing suffered no loss because the buyer paid the seller the full contract price. __ S.W.3d at __. Regardless of the court of appeals' conclusion that *Paramount* applies here, we disagree with the court of appeals' analysis of the summary judgment record.

Our standards for reviewing summary judgments are familiar. Because the court of appeals affirmed summary judgment in favor of Gotham, we must examine the entire record in the light most favorable to Pedeco, indulging every reasonable inference and resolving any doubts in Pedeco's favor. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). If there is a genuine issue of material fact, summary judgment is inappropriate. TEX. R. CIV. P. 166a(c).

Here, the court of appeals in *Gotham I* held Pedeco suffered no loss based upon testimony from Pedeco's president and WRI's CEO that WRI had reimbursed Pedeco for its expenses in controlling the well—testimony the court of appeals viewed as unequivocal. __ S.W.3d at __. While this testimony may well be unequivocal, it was not the only testimony in the matter. WRI's CEO also testified that Pedeco and WRI had a series of agreements (covering matters not addressed by the joint venture agreements or joint operating agreements) under which WRI "would share with [Pedeco] in any drilling profits or drilling losses in the aggregate at the end of the year, based on turnkey prices." As to the expenses for controlling the H&O Well, he testified that under the arrangement between WRI and Pedeco, WRI "would be entitled to recover . . . 50 percent of the cost" of expenses incurred in controlling the H&O Well. This testimony is sufficient to raise a genuine issue of material fact as to whether Pedeco suffered a loss and was entitled to

16

reimbursement under its indemnity policy with Gotham. *See* TEX. R. CIV. P. 166a(c). Accordingly, summary judgment in favor of Gotham on Gotham and Pedeco's contract claims cannot be supported on the ground that Pedeco suffered no loss. Because the parties raised additional arguments in their first appeal regarding summary judgment on their contract claims, we remand to the court of appeals for further proceedings.

### III. Conclusion

Gotham filed equity and contract claims, seeking a return of payments made to or on behalf of Pedeco because Pedeco allegedly failed to use due diligence and made misrepresentations regarding its working interest. Because several clauses in the policy address these matters, Gotham must proceed on its contract claim and may only rely on its equity claims if it prevails on its misrepresentation theory and elects the remedy of voiding the policy. We further hold that Gotham preserved its contract claim by raising it as an independent ground on appeal to affirm the same relief it had obtained in the trial court's judgment. We disagree with the court of appeals in *Gotham III* that the contract precludes Gotham from a recovery because several clauses address Gotham's ability to recover. And because we conclude genuine issues of material fact exist concerning any loss suffered by Pedeco, we remand for the court of appeals to consider the remaining grounds regarding Gotham and Pedeco's contract claims.

_____
Eva M. Guzman
Justice

17

**OPINION DELIVERED:** March 21, 2014