ACCEPTED
01-12-00470-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/24/2014 2:54:58 PM
CHRISTOPHER PRINE
CLERK

NO. 01-12-00470-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 8:00:00 AM
CHRISTOPHER A. PRINE
Clerk

ENTERGY CORPORATION, *et al.,*
*Appellants*

v.

DAVID JENKINS, *et al.,*
*Appellees*

## APPELLEES' REPLY TO RESPONSE TO
## MOTION FOR EN BANC RECONSIDERATION

Joseph D. Jamail
State Bar No. 10536000
denise@jamail-kolius.com
Frank M. Staggs, Jr.
Jamail & Kolius
500 Dallas, Suite 3434
Houston, Texas   77002-4793
Telephone:  (713) 651-3000
Telecopier: (713) 651-1957

E.R. Norwood
The Norwood Law Firm
340 Main Street
Liberty, Texas  77575
Telephone:  (936) 336-3700
Telecopier: (936) 336-7634

Michael D. Sydow
The Sydow Firm
1980 Post Oak Blvd., Suite 2100
Houston, Texas  77056
Telephone:  (713) 622-9700
Telecopier:  (713) 552-1949

Fred Hagans
State Bar No. 08685500
fhagans@hagans-law.com
Jennifer Rustay
Hagans Burdine Montgomery & Rustay
3200 Travis, Fourth Floor
Houston, Texas   77006
Telephone:   (713) 222-2700
Telecopier:   (713) 547-4950

John H. Conway
Brickfield Burchette Ritts & Stone
1025 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Telephone:  (202) 342-0800
Telecopier: (202) 342-0807

Joe F. Sandlin
Box 656
Anahuac, Texas  77514
Telephone:  (409) 267-3793
Telecopier: (409) 267-3792

ATTORNEYS FOR APPELLEES

# TABLE OF CONTENTS

*Page*

INDEX OF AUTHORITIES...................................................................................... ii

SUMMARY OF THE ARGUMENT .......................................................................1

ARGUMENT ...........................................................................................................1

      I.      A Court Of Appeals Cannot Disregard A Prior Appellate Ruling Unless A Recognized Exception To The Law Of The Case Doctrine Applies..........................................................................1

      II.     Entergy Misconstrues *Entergy Louisiana* ...............................................6

PRAYER ................................................................................................................10

CERTIFICATE OF COMPLIANCE......................................................................12

CERTIFICATE OF SERVICE ..............................................................................12

# INDEX OF AUTHORITIES

*Page(s)*

**Cases**

*Appalachian Power Co. v. Public Serv. Comm'n of West Virginia*,
812 F.2d 898 (4th Cir. 1987) ..............................................................9

*Briscoe v. Goodmark Corp.*,
102 S.W.3d 714 (Tex. 2003) ..............................................................3

*Caplinger v. Allstate Ins. Co.*,
140 S.W.3d 927 (Tex. App.—Dallas 2004, pet. denied) ...............................4

*City of Houston v. Harris*,
192 S.W.3d 167 (*Tex.* App.—Houston [14th Dist.] 2006, no pet.)............2, 3

*Entergy Louisiana, Inc. v. Louisiana Public Service Comm'n*,
539 U.S. 39 (2003)...............................................................1, 6, 7

*Ford Motor Co. v. Garcia*,
363 S.W.3d 573 (Tex. 2012) .......................................................2

*Gotham Ins. Co. v. Warren E&P, Inc.*,
No. 12-0452, 2014 WL 1190049 (Tex. Mar. 21, 2014)................................4

*Lawrence v. City of Wichita Falls*,
122 S.W.3d 322 (*Tex.* App.—Fort Worth 2003, pet. denied) .........................2

*Nat'l Union Fire Ins. Co. v. Ninth Court of Appeals*,
864 S.W.2d 58 (Tex. 1993) .......................................................2

**SUMMARY OF THE ARGUMENT**

Entergy's attempts to justify the majority's decision to revisit the jurisdictional issue that it fully litigated and lost on a prior appeal are deeply flawed. First, Entergy is wrong to claim that a court of appeals had unbounded discretion whether to treat a prior ruling as the law of the case. Second, Entergy again misconstrues the scope of FERC's exclusive jurisdiction by adopting a reading of *Entergy Louisiana, Inc. v. Louisiana Public Service Comm'n*, 539 U.S. 39 (2003) that is divorced from the actual facts and circumstances of that case. Neither argument supports the majority's opinion.

**ARGUMENT**

**I. A Court Of Appeals Cannot Disregard A Prior Appellate Ruling Unless A Recognized Exception To The Law Of The Case Doctrine Applies.**

Entergy has no legal basis for trying to relegate the law of the case doctrine into a principle that can be ignored on a whim. But Entergy's motives for diluting the doctrine are obvious. Having lost the jurisdictional argument in *Jenkins I*, Entergy's only escape from being held accountable for theft was to convince this Court to reverse *Jenkins I*, even though both the Texas Supreme Court and United States Supreme Court had refused to review it. This Court should correct its dilution of the law of the case doctrine.

First, Entergy mistakes the "discretionary" nature of the law of the case doctrine with the notion that the doctrine may be disregarded at will. *See* Response

-1-

at 8-9. There is no such thing as unbridled discretion, whether for law of the case or any other discretionary ruling. Indeed, courts routinely scrutinize discretionary rulings and reverse them when they are arbitrary, unreasonable, or made without regard to guiding legal principles. *See Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012); *see also Nat'l Union Fire Ins. Co. v. Ninth Court of Appeals*, 864 S.W.2d 58, 59-60 (Tex. 1993) (court of appeals abused its discretion by applying an "erroneous legal standard"). And here, the operative legal principles require adherence to a prior ruling on the same issue because no recognized exception applies.

Entergy asserts that jurisdictional rulings can always be revisited, but it cites no Texas cases holding that questions of jurisdiction are categorically exempt from being treated as law of the case. To the contrary, Jenkins pointed out instances where courts have not hesitated to give preclusive effect to jurisdictional rulings. *See, e.g.*, *Lawrence v. City of Wichita Falls*, 122 S.W.3d 322, 326-27 (Tex. App.— Fort Worth 2003, pet. denied) (governmental immunity).

Instead, Entergy cites *City of Houston v. Harris*, 192 S.W.3d 167, 171 (Tex. App.—Houston [14th Dist.] 2006, no pet.), which dealt with a very different situation. The *Harris* court considered jurisdiction on the basis of the facts after an earlier appeal had looked at jurisdiction solely from the sufficiency of the pleadings. The *Harris* case did not reverse the earlier holding, but rather

considered jurisdiction based on factual sufficiency, an issue not before the earlier panel. *See id.* (previous opinion "solely addresses a challenge to the sufficiency of the pleadings," whereas second appeal examines sufficiency of proof submitted on the jurisdictional issue). No comparable differences exist that could conceivably justify revisiting *Jenkins I*.

Entergy similarly misleads with its cite to *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716-17 (Tex. 2003). The *Briscoe* Court does not suggest that a court of appeals has *carte blanche* to disregard a prior appellate ruling on jurisdiction just because it disagreed with the result. As Jenkins explained, *Briscoe* dealt with a unique set of facts where the parties and an incomplete record had misled the court of appeals into dismissing the first appeal for lack of appellate jurisdiction. *Id.*; *see also id.* at 719 (Jefferson, C.J., concurring). Under those circumstances, the Court concluded that revisiting the "clearly erroneous" prior decision was appropriate. Nothing remotely like *Briscoe* exists in this case because the jurisdictional issue was fully and accurately developed in *Jenkins I*. Tellingly, Entergy fails to address these obvious distinctions that make *Briscoe* inapposite, even though Jenkins pointed them out.

Moreover, Entergy cannot avoid opinions of other Texas courts holding that an exception to law of the case for "clearly erroneous" decisions does not apply to rulings like *Jenkins I* that the Texas Supreme Court declined to review. *See*

*Caplinger v. Allstate Ins. Co.*, 140 S.W.3d 927, 930 (Tex. App.—Dallas 2004, pet. denied). Entergy quibbles with the reasoning in *Caplinger*, but Entergy cites no opinions supporting its view.

Instead, Entergy overreaches by misstating the holding in *Gotham Ins. Co. v. Warren E&P, Inc.*, No. 12-0452, 2014 WL 1190049, at *3 n.8 (Tex. Mar. 21, 2014). In *Gotham*, the Texas Supreme Court noted that the court of appeals had declined to treat a prior ruling as law of the case. *Id.* The Texas Supreme Court *did not address the propriety of that decision*, finding that the Court itself was not bound to a prior ruling that it previously declined to review. *Id.* At most, *Gotham* stands for the principle that the Texas Supreme Court can choose to review an issue that it decided to forgo on an earlier appeal. *Gotham* does not endorse Entergy's notion that this Court may bypass the appellate process by reviewing a decision of another court of appeals with which it disagrees.

Second, Entergy advances a single-sentence argument that changed circumstances provide a basis for avoiding the law of the case doctrine. Without record or legal citation, Entergy asserts the procedural posture of the case is different because FERC has exercised jurisdiction over Entergy's purchasing practices, and discovery has shown that the damages claimed rests on the ESA. Response at 11. That claim, however, is wrong. (1.CR.12-17, 42-44; 16.CR.2350-55, 2380-82).

Entergy's inability to identify any new developments pertinent to jurisdiction is telling. Because Entergy's arguments are purely legal, they are identical to those Entergy raised in *Jenkins I* and are not affected by any facts developed in discovery. In *Jenkins I*, Entergy made the same argument that FERC has exclusive jurisdiction over Jenkins's challenge to Entergy's wholesale power-purchasing decisions. Entergy then made the same argument to the Texas Supreme Court and then to the United States Supreme Court, but was unable to convince either Court that review was warranted. When the case returned to the trial court, Entergy made the same arguments again, and the issue was again briefed by the parties. (*See* 5.CR.516-764; 16.CR.2330-2616). The trial court properly followed *Jenkins I* and rejected Entergy's attempts to relitigate the issue.[1] (17.CR.2653-56; 18.CR.2764-2825). Indeed, the only difference between this appeal and *Jenkins I* is Jenkins's additional showing that class certification is appropriate. That is not a type of changed circumstance that justifies revising *Jenkins I*.

Additionally, FERC has *not* exercised jurisdiction over the purchasing practices at issue in this case, despite the fact that this case has been part of the public record since 2003, when the suit was filed, nor has Entergy requested it to

---

[1] Entergy tries to dismiss the trial court's extensive Findings of Fact and Conclusions of Law as nothing but Jenkins's briefing. Response at 2 n.1. In reality, both sides submitted proposed Findings and Conclusions and fully briefed the issues. The trial court then ruled in Jenkins's favor by adopting his proposed findings.

do so. Indeed, FERC has specifically declined to examine past purchasing practices. The purchasing practices at issue in this case were the subject of litigation, in a class action suit filed in Louisiana. *See Delaney v. Entergy La., Inc.*, 4.CR.514, Ex. M (Order Certifying Settlement Class). Yet in *Delaney*, the case was not dismissed based upon a claim of FERC exclusive jurisdiction. Rather than claiming that only FERC had jurisdiction, Entergy sought and obtained court approval of a settlement, thereby invoking judicial jurisdiction.

In sum, the only way to sustain the majority's effective overruling of *Jenkins I* is by creating a new exception to the law of the case doctrine, or by relegating the doctrine into a meaningless principle that courts can disregard whenever they choose. Neither approach comports with Texas law or sound judicial policy.

## II.   **Entergy Misconstrues *Entergy Louisiana***

Ignoring the ruling in *Jenkins I*, Entergy tries to expand the scope of FERC's exclusive jurisdiction by misinterpreting the decision in *Entergy Louisiana, Inc. v. Louisiana Public Service Comm'n*, 539 U.S. 39 (2003). Unlike this suit, which challenges Entergy's wholesale purchasing decisions, *Entergy Louisiana* dealt with cost allocations among the members of the Entergy System Agreement. The holding hinged on facts and provisions of the System Agreement materially different from this case.

The dispute in *Entergy Louisiana* started in 1993, when FERC initiated a proceeding to determine whether Entergy had violated the System Agreement by classifying certain "mothballed" units as "available" for cost equalization. *Id.* at 44. FERC determined that Entergy had, in fact, violated the System Agreement. *Id.* However, FERC then approved an amendment to the System Agreement that explicitly establishes when a "mothballed" unit can be considered available. *Id.* at 44-45. Section 10.02 was amended, to read as follows:

> A unit is considered available to the extent the capability can be demonstrated and (1) is under the control of the System Operator, or (2) is down for maintenance or nuclear refueling, or (3) is in extended reserve shutdown (ERS) with the intent of returning the unit to service at a future date in order to meet Entergy System requirements. The Operating Committee's decision to consider an ERS unit to be available to meet future System requirements **shall be evidenced** in the minutes of the Operating Committee and **shall be based** on consideration of current and future resource needs, the projected length of time the unit would be in ERS status, the projected cost of maintaining such unit, and the projected cost of returning the unit to service.

*Id.* at 44 n.3 (emphasis added). By this language, the Supreme Court recognized that the System Agreement now "dictates how and by whom" the classification of units "should be made." *Id.* at 50. As a result, the Louisiana PUC's later attempt to challenge decisions dictated by the tariff were preempted by FERC. *Id.*

Unlike the amended portion of the System Agreement at issue in *Entergy Louisiana*, the System Agreement does not "dictate how and by whom" decisions will be made about the amounts of wholesale energy to be purchased. Nothing in

the System Agreement, including the items listed in Entergy's response, dictates *how* Entergy must make its decisions regarding the amounts of wholesale energy it purchases.

Entergy points to sections that generally indicate how the System Capability will be operated and/or controlled (MSS-3 Section 30.02, ESA Sections 4.08 and 6.01). Only one of the sections identified by Entergy even deals with "buying and selling" wholesale energy—Section 6.02(d). That section is written in very general language: "Services . . . shall: . . . (d) Determine the availability of energy for purchase from or sale to outside systems on an economical basis under effective contracts and arrange for and schedule such transactions." This language does not require any specific type of decision making, contained within designated minutes or documents, nor is there anything that requires Entergy to consider present and future needs, or how to evaluate costs between generated energy versus energy available for purchase. In particular, there is nothing in the System Agreement that requires (or even permits) Entergy to use a false, artificially low hypothetical cost of generated energy to avoid purchasing lower cost wholesale energy.

Interestingly Entergy points to Sections 30.08, 30.09, and 30.10 of the System Agreement concerning "after-the-fact" allocations among the various Operating Companies, including "specified adders." None of this, however, is included in the purchasing decisions. In fact, the evidence is that Entergy actually

-8-

*ignores* the "specified adders" that must be included in the cost allocations when creating a hypothetical cost of generated energy to use in its comparisons with the actual cost of available wholesale energy for purchase. Because the System Agreement does not prescribe or dictate the parameters for Entergy's wholesale purchasing decisions, Jenkins's challenge to those decisions is not preempted by FERC.

*Entergy Louisiana* is further distinguishable because it did not involve purchasing decisions regarding wholesale power. That is an important—and dispositive—distinction. Entergy ignores the fact that FERC has clearly expressed that it treats "purchasing decisions" differently, a point that *Jenkins I* correctly noted. Entergy tries to sidestep this hurdle by overstating the holding in cases, such as *AEP Generating Co.*, 36 FERC ¶ 61,226 (1986). That case, however, deals with cost allocations among integrated system participants, not the purchasing decisions at issue in this case. The same is true of *Appalachian Power Co. v. Public Serv. Comm'n of West Virginia*, 812 F.2d 898, 900, 903 (4th Cir. 1987), which dealt with FERC's exclusive jurisdiction over an agreement authorizing cost-allocations among members of system, pursuant to its power to scrutinize "rates or charges" for the transmission and *sale* of energy in commerce. Entergy's *purchasing* decisions do not trigger FERC's exclusive jurisdiction, and this Court was wrong to hold otherwise.

## PRAYER

For these reasons, Appellees pray for the relief requested in their Motion.

Appellees also pray for such further relief to which they may be entitled.

Respectfully submitted,

**JAMAIL & KOLIUS**

*/s/ Joseph D. Jamail*
**Joseph D. Jamail**
State Bar No. 10536000
**Frank Staggs**
State Bar No. 19003700
500 Dallas Street, Suite 3434
Houston, Texas  77002
Telephone:  (713) 651-3000
Telecopier:  (713) 651-1957

THE NORWOOD LAW FIRM
**E.R. Norwood**
State Bar No. 15113500
340 Main Street
Liberty, Texas  77575
Telephone:  (936) 336-3700
Telecopier:  (936) 336-7634

THE SYDOW FIRM
**Michael D. Sydow, Esq.**
State Bar No. 19592000
1980 Post Oak Blvd., Suite 2100
Houston, Texas  77056
Telephone:  (713) 622-9700
Telecopier:  (713) 552-1949

HAGANS BURDINE MONTGOMERY
& RUSTAY, P.C.
**Fred Hagans**
State Bar No. 08685500
**Jennifer Rustay**
State Bar No. 24002124
3200 Travis, 4th Floor
Houston, Texas  77006
Telephone:  (713) 222-2700
Telecopier:  (713) 547-4950

OF COUNSEL:

**John H. Conway**
*Admitted Pro Hac Vice*
Brickfield Burchette Ritts & Stone
1025 Thomas Jefferson Street, N.W.
Eighth Floor, West Tower
Washington, D.C. 20007
Telephone:  (202) 342-0800
Telecopier:  (202) 342-0807

**Joe F. Sandlin**
State Bar No. 17621000
Box 656
Anahuac, Texas  77514
Telephone:  (409) 267-3793
Telecopier:  (409) 267-3792

**COUNSEL FOR APPELLEES**

## CERTIFICATE OF COMPLIANCE

This motion complies with the length limitations of TEX. R. APP. P. 9.4 because this motion consists of 2,189 words, excluding the parts of the motion exempted by TEX. R. APP. P. 9.4(i)(1).

*/s/ Joseph D. Jamail*
Joseph D. Jamail

## CERTIFICATE OF SERVICE

I certify that a copy of this motion was served on counsel of record as follows via eFile and/or electronic mail and/or Certified Mail–RRR on the 24th day of December, 2014.

Mr. Larry L. Germer
Mr. David L. Tolin
Ms. Kelli B. Smith
GERMER GERTZ, L.L.P.
P.O. Box 4915 (77704)
550 Fannin, Suite 400
Beaumont, Texas 77701

Mr. Paul A. Scheurich
ENTERGY SERVICES, INC.
350 Pine Street
P.O. Box 2951
Beaumont, Texas 77704

Mr. David C. Duggins
Mr. Mark Strain
DUGGINS WREN MANN & ROMERO, LLP
P.O. Box 1149
Austin, Texas 78767

Mr. Richard G. Baker
BAKER & ZBRANEK, PC
1935 Trinity Street
Liberty, Texas 77575

*/s/ Joseph D. Jamail*
Joseph D. Jamail