

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| VALERUS COMPRESSION SERVICES, A TEXAS LIMITED PARTNERSHIP, and | § | |
| VALERUS COMPRESSION SERVICES MANAGEMENT, LLC, A TEXAS LIMITED LIABILITY COMPANY, GENERAL PARTNER, | § | |
| | § | No. 08-13-00366-CV |
| Appellants, | § | Appeal from the |
| | § | 143rd Judicial District Court |
| v. | § | of Reeves County, Texas |
| | § | (TC#13-01-20290-CVR) |
| REEVES COUNTY APPRAISAL DISTRICT and LOVING COUNTY APPRAISAL DISTRICT, | § | |
| | § | |
| Appellees. | § | |
| | § | |

**O P I N I O N**

This is an ad-valorem tax case of first impression decided on competing motions for traditional summary judgment. The issues in this appeal, like those in three other cases on our docket, concern the taxation of natural gas pipeline compressors.[1] These compressors facilitate

---

[1] These cases are: (1) EXLP Leasing LLC and EES Leasing LLC v. Loving County Appraisal District, No. 08-13-00348-CV; (2) EXLP Leasing LLC and EES Leasing LLC v. Ward County Appraisal District, No. 08-13-00359-CV; and (3) MidCon Compression, LLC v. Reeves County Appraisal District and Loving County Appraisal District, No. 08-13-00322-CV. Although this case differs both factually and procedurally from the others, it raises many of the issues present in those cases. The resolution of these issues is important to the parties involved in all the cases on our docket because millions of dollars are at stake. *See, e.g.,* Ender Reed & Connor McNally, *Heavy Equipment Tax Loophole Being Exploited,* TEXAS ASS'N OF COUNTYS (March 26, 2015),

the production and processing of natural gas by regulating the pressure necessary to extract it and move it. In this case, the trial court ruled—as urged by Appellants—that forty-three compressors (five located in Reeves County and thirty-eight in Loving County on January 1, 2012) qualified as heavy equipment. But the trial court ruled—as urged by Appellees—that taxable situs lay in Reeves and Loving Counties and that the statutory formulas for calculating the market value of heavy equipment inventory held for lease or rent and the tax due on it were unconstitutional as applied. On appeal, Appellants contend that the trial court erred in so ruling. We affirm, in part, and reverse and render, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants—Valerus Compression Services, a Texas Limited Partnership and Valerus Compression Services Management, LLC, a Texas Limited Liability Company, General Partner[2]—leased the forty-three compressors in dispute to third parties. In 2011, Valerus received lease payments in the amount of $394,952.88 for the five compressors operating in Reeves County and $1,973,988.00 for the thirty-eight operating in Loving County.

That same year, the Legislature amended the statutes governing the taxation of heavy equipment inventory: Sections 23.1241 and 23.1242 of the Texas Tax Code. *See* Act of May 21, 2011, 82nd Leg., R.S., ch. 322, §§ 1, 2, 3, 2011 TEX.GEN.LAWS 938, 938-40. Of particular importance were changes to the statutory definitions of "dealer," "dealer's heavy equipment inventory," "sales price," and "total annual sales." *See id.* at §§ 1, 2, 2011 TEX.GEN.LAWS 938,

---

http://county.org/Legislative/news/Pages/County%20Issues%2003-26-15/Companies-Exploit-Heavy-Equipment-Tax-Loophole.aspx (last visited September 21, 2015). It is also important to other entities not parties to these cases but with a vested interest in their outcome. One such entity is United Rentals, Inc., "the world's largest equipment-rental provider," who submitted an amicus curiae brief in this case and in the others supporting the "[c]ompressor [c]ompanies."

[2] For easy reference, and unless otherwise indicated, we will refer to Appellants collectively as Valerus.

938-40; TEX.TAX CODE ANN. § 23.1241(a)(1)(defining "dealer"), § 23.1241(a)(2)(defining "dealer's heavy equipment inventory"), § 23.1241(a)(7)(defining "sales price"), § 23.1241(a)(9)(defining "total annual sales")(West 2015). These changes, which became effective January 1, 2012, altered the formulas for calculating the market value of heavy equipment inventory and the tax due on it. *See id*. §§ 9, 10, 2011 TEX.GEN.LAWS 938, 941; TEX.TAX CODE ANN. § 23.1241(b)(establishing formula for calculating market value of heavy equipment inventory for ad valorem purposes); § 23.1241(b-1)(clarifying that market value of item of heavy equipment lease or rented then sold is the sales price plus the lease and rental payments); § 23.1242(a)(4)(defining "unit property tax factor"); § 23.1242(b)(establishing formula for calculating the unit property tax of each item of heavy equipment)(West 2015).

Previously, only dealers holding items of heavy equipment inventory for sale (or for lease or rent with an option to purchase) could calculate the market value of their inventory based on sales for the previous tax year, divided by twelve. *See* Act of May 20, 1997, 75th Leg., R.S., ch. 1184, § 2, 1997 TEX.GEN.LAWS 4564, 4565-68 (amended 1999); Act of May 28, 1999, 76th Leg., R.S., ch. 1550, §§ 1, 2, 1999 TEX.GEN.LAWS 5337, 5337 (amended 2011). But beginning January 1, 2012, dealers holding items of heavy equipment inventory for lease or rent (not subject to an option to purchase) could calculate the market value of their inventory based on lease or rental payments for the previous tax year, divided by twelve. Thus, as amended, the formulas for calculating the market value of heavy equipment inventory and the tax due on it encompassed the *total revenue* generated by a dealer's entire inventory—through sales and lease or rental payments—for the previous tax year, divided by twelve. *See* TEX.TAX CODE ANN.

3

§§ 23.1241(b), 23.1241(b-1), 23.1242(a)(4), 23.1242(b).[3]

Relying on the amendments to Sections 23.1241 and 23.1242, Valerus claimed that it was a dealer of heavy equipment inventory, that the forty-three compressors qualified as heavy equipment, and that their market value was $197,411.74: the sum of $394,952.88 in lease payments for the five compressors operating in Reeves County divided by 12 ($32,912.74) plus

_____

[3] These subsections read as follows:

[23.1241](b)  For the purpose of the computation of property tax, the market value of a dealer's heavy equipment inventory on January 1 is the total annual sales, less sales to dealers, fleet transactions, and subsequent sales, for the 12-month period corresponding to the preceding tax year, divided by 12.

[23.1241](b-1)  For the purpose of the computation of property tax on the market value of the dealer's heavy equipment inventory, the sales price of an item of heavy equipment that is sold during the preceding tax year after being leased or rented for a portion of that same tax year is considered to be the sum of the sales price of the item plus the total lease and rental payments received for the item in the preceding tax year.

.          .          .

[23.1242](a)(4)  'Unit property tax factor' means a number equal to one-twelfth of the preceding year's aggregate ad valorem tax rate at the location where a dealer's heavy equipment inventory is located on January 1 of the current year.

[23.1242](b)  Except for an item of heavy equipment sold to a dealer, an item of heavy equipment included in a fleet transaction, an item of heavy equipment that is the subject of a subsequent sale, or an item of heavy equipment that is subject to a lease or rental, an owner or a person who has agreed by contract to pay the owner's current year property taxes levied against the owner's heavy equipment inventory shall assign a unit property tax to each item of heavy equipment sold from a dealer's heavy equipment inventory.  In the case of a lease or rental, the owner shall assign a unit property tax to each item of heavy equipment leased or rented.  The unit property tax of each item of heavy equipment is determined by multiplying the sales price of the item or the monthly lease or rental payment received for the item, as applicable, by the unit property tax factor.  If the transaction is a lease or rental, the owner shall collect the unit property tax from the lessee or renter at the time the lessee or renter submits payment for the lease or rental.  The owner of the equipment shall state the amount of the unit property tax assigned as a separate line item on an invoice.  On or before the 10th day of each month the owner shall, together with the statement filed by the owner as required by this section, deposit with the collector an amount equal to the total of unit property tax assigned to all items of heavy equipment sold, leased, or rented from the dealer's heavy equipment inventory in the preceding month to which a unit property tax was assigned.  The money shall be deposited by the collector to the credit of the owner's escrow account for prepayment of property taxes as provided by this section.  An escrow account required by this section is used to pay property taxes levied against the dealer's heavy equipment inventory, and the owner shall fund the escrow account as provided by this subsection.

TEX.TAX CODE ANN. §§ 23.1241(b), 23.1241(b-1), 23.1242(a)(4), 23.1242(b)(West 2015).

$1,973,988.00 in lease payments for the thirty-eight compressors operating in Loving County divided by 12 ($164,499.00). But Valerus did not pay the taxes due on the compressors to the taxing authorities in Reeves and Loving Counties. Instead, it remitted payment to the taxing authority in the county in which its principal place of business was located: Harris County.

Appellees—Reeves County Appraisal District and Loving County Appraisal District[4]—asserted that the compressors operating in their respective counties on January 1, 2012 were taxable as business personal property. *See* TEX.TAX CODE ANN. § 23.01(a)(West 2015)("Except as otherwise provided by this chapter, all taxable property is appraised at its market value as of January 1."). Consequently, each district placed on its appraisal roll the compressors located within its taxing jurisdiction and appraised them at market value. For the 2012 tax year, the five compressors in Reeves County were valued at $1,057,120.00 and the thirty-eight in Loving County at $5,595,530.00. Valerus protested the determinations that the compressors belonged on these counties' appraisal rolls and the valuations ascribed to the compressors. The respective appraisal review boards ruled against Valerus, and it sought judicial review of these rulings.

In the trial court,[5] the Appraisal Districts argued that Sections 23.1241 and 23.1242 were unconstitutional on their face and as applied because they yielded "an appraisal and tax not related to market value and unequal and not uniform compared to appraisal and taxation of similar property. . . ." The Appraisal Districts also argued that, even if these formulas passed constitutional muster, Valerus could not take advantage of them because their compressors did not qualify as "heavy equipment" as that term is defined in Section 23.1241(a)(6). The Appraisal

---

[4] For easy reference, and unless otherwise indicated, we will refer to Appellees collectively as the Appraisal Districts.

[5] Valerus's two lawsuits were consolidated into one.

Districts further argued that any tax due was payable to Reeves County and Loving County, not Harris County, because the compressors were located in these counties on January 1, 2012 and had been there for more than a temporary period.

Both sides moved for summary judgment. Valerus sought judgment declaring that the compressors qualified as heavy equipment, that situs lay in Harris County, and that the formulas for calculating the market value of heavy equipment inventory held for lease and the tax due on it were constitutional. The Appraisal Districts opposed Valerus's motion and sought judgment declaring that situs lay in Reeves and Loving Counties and that the formulas were unconstitutional on their face and as applied. The trial court ruled as follows:

> [T]he Plaintiff's Motion for Summary Judgment is granted in part, holding that the compressor packages at issue here in are self-powered, that they are intended for use for industrial purposes, and that the Plaintiffs are heavy equipment dealers as defined by TEX. TAX CODE § 23.1241(a)(l). Therefore, TEX. TAX CODE §§ 23.1241, 23.1242 are applicable to the compressor packages at issue herein. The Plaintiff's Motion for Summary Judgment is otherwise denied.

> [T]he Defendants' Motion for Summary Judgment is granted, holding that TEX. TAX CODE §§ 23.1241, 23.1242 are unconstitutional as applied to the Plaintiffs' compressor packages since they create a valuation that is not based on a reasonable market value and neither equal nor uniform with the appraisal of like property. The Court further grants the Defendants' Motion holding that the compressor packages at issue in the suit against the Loving County Appraisal District had situs in Loving County as of January 1, 2012, and that the compressor packages at issue in the suit against the Reeves County Appraisal District had situs in Reeves County as of January 1, 2012, and that TEX. TAX CODE §§ 23.1241, 23.1242 do not alter that situs, even if they were constitutional. The Defendants' Motion for Summary Judgment is denied to the extent it pleads for a ruling of facial unconstitutionality of the referenced statutes.

Valerus timely appealed.[6]

---

[6] The Appraisal Districts attempted to challenge the trial court's ruling that the compressors qualified as heavy equipment in a cross-appeal. But we dismissed it as untimely. *See Valerus Compression Servs. v. Reeves Cnty. Appraisal Dist.*, No. 08-13-00366-CV, 2014 WL 645035, *1 (Tex.App.--El Paso Feb. 19, 2014, no pet.)(mem. op.)(dismissing appeal in part).

6

## SUMMARY JUDGMENT STANDARD OF REVIEW

We review a trial court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both sides move for summary judgment, each bears the burden of establishing that it is entitled to judgment as a matter of law; neither side can prevail because of the other's failure to discharge its burden. *City of Garland v. Dallas Morning News*, 969 S.W.2d 548, 552 (Tex.App.--Dallas 1998, pet. granted)(en banc), *aff'd*, 22 S.W.3d 351 (Tex. 2000). On appeal, we review all summary-judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Valence Operating Co.*, 164 S.W.3d at 661. We may affirm the judgment, reverse and render a judgment for the other side if appropriate, or reverse and remand if neither party has met its summary-judgment burden. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 50 (Tex.App.--Dallas 2006, pet. denied).

## MARKET VALUE

In its first issue, Valerus argues that the trial court erred in declaring that Sections 23.1241 and 23.1242 were unconstitutional as applied to the forty-three compressors in dispute. We agree.

### *Standard of Review*

We presume a tax statute enacted by the legislature is constitutional, and a party challenging the constitutionality of a tax statute bears the burden to demonstrate its unlawfulness. *See Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934, 936 (Tex. 1996). If a tax statute is reasonably susceptible to different constructions, one of which renders the statute constitutionally valid and one invalid, then we must adopt the construction upholding the validity

7

of the enactment. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).

*Applicable Law*

Section 1 of article VIII of the Texas Constitution establishes the constitutional standard for taxation:

> Sec. 1. (a) Taxation shall be equal and uniform.
>
> (b) All real property and tangible personal property in this State . . . shall be taxed in proportion to its value, *which shall be ascertained as may be provided by law*. [Emphasis added].

TEX.CONST. art. VIII, § 1(a) and (b). In accordance with these constitutional directives, ad valorem tax rates must be uniform for all types of property and ad valorem tax values must be based on the "market value" of the property. *Enron Corp.*, 922 S.W.2d at 935; *Nootsie*, 925 S.W.2d at 661.

But the constitution does not prescribe a particular formula or standard for determining the "market value" of property. *Enron Corp.*, 922 S.W.2d at 936. Instead, it directs that "value" is to "be ascertained as may be provided by law." *Id.*, *citing* TEX.CONST. art. VIII, § 1(b). "The phrase 'as may be provided by law,' when used in a constitutional provision establishing a general legal principle or administrative framework, has been held to 'clearly vest[ ] the Legislature with the authority to exert substantial control over the mechanics of [the subject matter addressed].'" *Travis Cent. Appraisal Dist. v. FM Properties Operating Co.*, 947 S.W.2d 724, 733 (Tex.App.--Austin 1997, writ denied). Because there are no specific requirements in the constitution for determining the market value of property, "the Legislature may classify property differently in arriving upon its market value[,]" "as long as the classifications are not

8

unreasonable, arbitrary, or capricious." *Enron Corp.*, 922 S.W.2d at 936. If the Legislature adheres to this maxim in "classify[ing] property differently in arriving upon its market value[,]" "there is no constitutional impediment to utilizing differing methods for *determining market value for ad valorem tax purposes.*" [Emphasis in the original]. *Id*. Accordingly, "the Legislature has the constitutional authority to provide for a method of determining the *market value of inventory* that differs from the method for arriving upon the market value of other property." [Emphasis added]. *Id*.

## *Discussion*

The Appraisal Districts have failed to demonstrate that Sections 23.1241 and 23.1242 are unconstitutional as applied to the forty-three compressors in dispute.

### 1. In Proportion to its Value

The Appraisal Districts argue that Sections 23.1241 and 23.1242 violate the constitutional requirement that property be taxed in proportion to its market value because, for ad valorem purposes, "market value" means "fair market value," "cash market value," or "fair cash market value" as calculated under the "willing buyer-willing seller" test. Under this test, market value corresponds to:

> [T]he price which the property would bring when it is offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity of buying it, taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all reasonable probability will become available within the reasonable future.

*City of Austin v. Cannizzo*, 153 Tex. 324, 334, 267 S.W.2d 808, 815 (1954); *see* TEX. TAX CODE ANN. § 1.04(7)(A)-(C)(West 2015)(defining "market value" in a similar vein). The Appraisal Districts postulate that valuing leased items of heavy equipment at one-twelfth of the prior year's

9

lease payments does not reflect the cash market value at which a piece of heavy equipment would sell in an arms-length transaction. According to the districts, the Legislature acted in unreasonable, arbitrary, and capricious manner by ignoring the willing buyer-willing seller test when amending the formulas for calculating the market value of heavy equipment inventory held for lease and the tax due on it because, under these formulas, the forty-three compressors are appraised at "2% to 14% of their undisputed fair market value." The Appraisal Districts' argument is unavailing.

To succeed in arguing that Sections 23.1241 and 23.1242 violate the constitutional requirement that property be taxed in proportion to its market value, the Appraisal Districts must demonstrate that the only constitutionally-acceptable method for determining the market value of heavy equipment inventory held for lease or rent as a whole is to ascertain the prices at which each item of inventory would sell for in an arms-length transaction and aggregate them. *See FM Properties*, 947 S.W.2d at 733. Stated another way, the Appraisal Districts must prove that it is unreasonable, arbitrary, or capricious for the legislature to value heavy equipment inventory held for lease or rent based on the income generated by the items actually leased or rented. *See id*. The Appraisal Districts have failed to so prove. Put simply, it is not unreasonable, arbitrary, or capricious to determine the market value of heavy equipment inventory held for lease or rent based on the income generated by the items actually leased or rented. In fact, valuing heavy equipment inventory in this manner makes sense because inventory, by definition, is different than other types of property.

Inventory is an idle stock of physical goods a business holds on hand in the regular course of business awaiting consumption at a future point in time. *See FM Properties.*, 947 S.W.2d at

10

728, 730. Although each item of inventory has some economic value in an abstract sense, an owner does not capture the maximum economic value of each item while it sits idly generating no revenue. The maximum economic value of an item of inventory is unlocked when it generates revenue. Correspondingly, because inventory is not intended to be held for any period of time, capturing its value is difficult given that inventory levels tend to fluctuate significantly throughout the year. *Enron Corp.*, 922 S.W.2d at 939-40; *Expo Motorcars, L.L.C. v. Harris County Appraisal Dist.*, 01-08-00473-CV, 2009 WL 2232017, *4 (Tex.App.--Houston [1st Dist.] July 23, 2009, pet. denied)(mem. op.). Thus, given that the maximum economic value of inventory is tied to the revenues it generates and that value is a point-in-time estimate, it is neither unreasonable nor arbitrary nor capricious for the legislature to require use of a 12-month trailing, revenue-based method for valuing heavy equipment inventory held for lease.

This method for valuing inventory of large, expensive goods is neither novel nor unique. The Legislature, "understand[ing] and correctly appreciate[ing] the needs of" businesses dealing with big, expensive goods has responded by passing laws "directed to problems made manifest by experience[,]" *i.e.*, the special provisions permitting inventory involving motor vehicles, watercraft and outboard motors, manufactured housing, and—of course—heavy equipment, to be valued using a 12-month trailing revenue-based method. *See Enron Corp.*, 922 S.W.2d at 934 [Internal quotation marks and citations omitted]; TEX.TAX CODE ANN. § 23.121 (motor vehicles); § 23.124 (watercraft and outboard motors); § 23.1241 (heavy equipment); § 23.127 (manufactured housing). For inventory consisting of motor vehicles, watercraft and outboard motors, and manufactured housing, revenues are based on sales. *See* TEX.TAX CODE ANN. §§ 23.121, 23.124, 23.127. This sales-based method for ascertaining the market value of inventory has been upheld

as constitutionally permissible because it is reasonable—not arbitrary or capricious—to require dealers to pay taxes only on inventory actually sold. *See Expo Motorcars*, 2009 WL 2232017, at *4-*5 (upholding the constitutionality of Section 23.121's method for calculating the market value of motor vehicle inventory as of January 1 of a tax year based on actual sales from the previous calendar year because a sales-based method, as opposed to single-date valuation method, achieves a more accurate reflection of the market value of motor vehicle inventory, since inventory levels fluctuate widely over the course of a year).

For heavy equipment inventory, revenues are based on sales and lease or rental payments. *See* TEX.TAX CODE ANN. § 23.1241. The Appraisal Districts do not contend that the sales-based portion of the formula for calculating the market value of heavy equipment inventory is unconstitutional, likely because such a contention would be futile. *See Expo Motorcars*, 2009 WL 2232017, at *4-*5. Instead, as mentioned previously, they contend that the lease- (and rental-) based portion of the formula is unconstitutional as applied to the compressors because it "results in a valuation of 2% to 14% of their true market value." But just as it is eminently reasonable to require dealers of inventory held for sale in the ordinary course of business to pay taxes only on inventory actually sold, it is eminently reasonable to require dealers of inventory held for lease or rent in the ordinary course of business to pay taxes only on inventory actually leased or rented. The nature of the beast dictates this outcome.

An operating lease or rental transaction involving an item of heavy equipment is the purchase of a service produced by the lessor, not the purchase of a sale of a good. The lessee or renter is purchasing the right to use an item of heavy equipment for a specific period of time, and the item's value is derived from its use at that given moment in time. To the owner of an item of

12

inventory producing lease or rental income, the value of such an item is the present worth of the future payments expected over the item's remaining service life. *See FM Properties*, 947 S.W.2d at 734. Given this economic reality, it is reasonable to calculate the market value of such an item, the efficiency and service life of which is declining during the lease or rental period, based on the current income generated by the item. By directing that the value of heavy equipment inventory held for lease and rent is equivalent to the income generated by the lease and rental payments, Sections 23.1241 and 23.1242 "essentially require[] nothing more than that the inventory of a business should, for taxation purposes, be considered as income-producing property and its market value determined pursuant to the income approach." *See id.* Arguably, employing a 12-month trailing, revenue-based method for valuing heavy equipment inventory held for lease is inherently fairer and more likely to reflect the market value of that inventory than other approaches. Indeed, the Appraisal Districts' proposed method for determining the market value of Valerus's inventory—the sum of the prices each item of inventory would command if sold in arms-length transactions regardless of income generated by the inventory as a whole—is arguably unreasonable. Why insist on taxing an item of heavy equipment *inventory held for the sole purpose of generating income* based on a formula better suited for determining the market value of *individual goods held for sale*?

The answer, according to the Appraisal Districts, is because Sections 23.1241 and 23.1242 create a loophole permitting dealers of heavy equipment inventory held for lease or rent to escape taxation by mandating that the value of inventory as a whole does not include items not leased or rented, even though these items have substantial value if sold or owned outright. But that result is not determinative of whether Sections 23.1241 and 23.1242 are arbitrary, unreasonable, or

13

capricious classifications by the Legislature.   This is because the Legislature has the authority to implement tax policy inuring to the benefit of the taxpayer rather than to the state.   *See Enron Corp.*, 922 S.W.2d at 939.   As explained above, it is not unreasonable, arbitrary, or capricious to calculate the taxable value of heavy equipment inventory held for lease or rent based on the revenues generated by the portions of inventory actually leased or rented.

The Appraisal Districts, citing *FM Properties,* maintain that "[m]arket value, as determinable through application of the 'willing buyer-seller test' cannot be ignored."   *See FM Properties*, 947 S.W.2d at 732, *citing City of Saginaw v. Garvey Elevators, Inc.*, 431 S.W.2d 575, 579 (Tex.Civ.App.--Fort Worth 1968, writ ref'd n.r.e.).   But *FM Properties* does not hold, and does not stand for the proposition, that the market value of inventory held for the sole purpose of generating income is determined by the sum of the prices each item of inventory would command if sold in arms-length transactions.   In fact, the court in *FM Properties* renounced this approach in valuing real estate inventory held for sale in the ordinary course of a trade or business.   The court concluded that valuing inventory as a unit based on "what a purchaser would pay for property at the present time in a single transaction," rather than on "what might be paid by dozens or even hundreds of purchasers if the property were sold in pieces over an extended period of time[,]" "is inherently fairer and more likely to produce true market value than other approaches such as multiplying the total number of inventory items on hand by the retail price of each individual item." *FM Properties*, 947 S.W.2d at 729, 731.   It was in this context in which the court opined that the "number of lots times retail price of each lot" formula did not capture the inventory's "[m]arket value, as determinable through application of the 'willing buyer-seller test'" because this valuation method produced "[a]n amount that no willing buyer would pay for . . . [the] entire

inventory of lots at a given point in time." *See FM Properties*, 947 S.W.2d at 732.

*FM Properties* actually supports the proposition that it is constitutionally permissible to determine the market value of heavy equipment inventory held for lease or rent based on the revenues generated by the portions of inventory actually leased or rented. *FM Properties*, 947 S.W.2d at 731-34 (upholding the constitutionality of statutory method for calculating the market value of real estate inventory based on what a purchaser would pay for all of the inventory in a single transaction because this valuation method achieves a more accurate reflection of the market value of real estate inventory held for as a unit for the purpose of generating income, since method, among other reasons, more painstakingly accounts for the net income that a potential purchaser might anticipate deriving from the purchase of the property, after the deduction of development and marketing costs and with due regard for the time value of money, rather than merely recognizing a gross income figure that might be anticipated from the sale of each particular parcel over a designated period of time without accounting for the inherent costs). Viewing *FM Properties* in this light is consistent with the constitutional requirement that value is "ascertained as may be provided by law" and is in accord with the Supreme Court's pronouncement in *Enron Corp.* that inventory may be valued differently than other types of property, as long as the standard for ascertaining its value is neither unreasonable, arbitrary, or capricious.

Based on the foregoing discussion, we conclude that the Appraisal Districts have failed to demonstrate that Sections 23.1241 and 23.1242, as applied in this case, run afoul of the constitutional requirement that all property be taxed in proportion to its value.[7] Accordingly, the

---

[7] The Appraisal Districts invite us to affirm the trial court's ruling on a ground not raised in a cross-appeal: the argument that Sections 23.1241 and 23.1242 are unconstitutional on their face. They contend that they were not required to file a cross-appeal raising this ground because they are not seeking more favorable relief than that granted by the trial court but "are merely presenting additional, independent grounds for affirming the trial court's judgment in

15

trial court erred in concluding otherwise.

## 2. Equal and Uniform

The Appraisal Districts also contend that Sections 23.1241 and 23.1242 violate the constitutional requirement that taxation be equal and uniform because these statutes favor leased compressors over owned compressors even when the compressors are alike in all relevant respects. The result of this disparate treatment, according to the Appraisal Districts, is that operators who own compressors pay disproportionately higher taxes than do dealers who lease compressors from their inventory. The Appraisal Districts' contention is without merit.

In contending that Sections 23.1241 and 23.1242 are unconstitutional because they treat operators who own compressors differently than dealers who lease compressors from their inventory, the Appraisal Districts are comparing one class of persons to another class of persons. The crux of the Appraisal Districts' complaint is not that these statutes discriminate against similarly-situated property (commercially-leased compressors) or similarly-situated taxpayers (dealers of compressors held for lease), but rather that they discriminate against differently-situated property (privately-owned compressors) or differently-situated taxpayers (operators of privately-owned compressors). That Sections 23.1241 and 23.1242 produce disparate appraisal values among differently-situated property or taxpayers does not prove that are unequal and non-uniform because the constitutional mandate of equality and uniformity requires

appealing the denial of a facial challenge." A party may raise an independent ground for obtaining the same relief awarded in the judgment as a cross-point on appeal. [Quotation marks omitted]. *Gotham Ins. Co. v. Warren E & P, Inc.*, 455 S.W.3d 558, 566 (Tex. 2014). But a party seeking greater relief than that awarded in the judgment must file a notice of appeal. *Id*. Here, the Appraisal Districts moved for summary judgment declaring that Sections 23.1241 and 23.1242 were unconstitutional on their face and applied. Although they prevailed on their applied-as challenge, they did not on their facial challenge. In its summary judgment, the trial denied the Appraisal Districts' motion for summary judgment "to the extent it pleads for a ruling of facial unconstitutionality of the referenced statutes." By asking us to affirm the trial court's judgment on a ground expressly denied by the trial court, the Appraisal Districts are seeking greater relief than that awarded in the judgment. Accordingly, the Appraisal Districts were required to raise their facial challenge in a cross-appeal. Because they did not, we do not address it.

16

only that all property or persons falling within the same class be taxed alike. *Hurt v. Cooper*, 130 Tex. 433, 440-41, 110 S.W.2d 896, 901 (1937). In other words, a tax system must operate equally within each class. The relevant class here is commercially-leased compressors or dealers of this type of inventory. Sections 23.1241 and 23.1242 apply even-handedly to this class because the amount of tax due on this type of inventory is always based upon the previous year's revenue, divided by 12. Because there is no evidence that this valuation method is not applied equally and uniformly to this type of inventory, there is no disparate treatment within the class.

We concluded that the Appraisal Districts have failed to show that Sections 23.1241 and 23.1242, as applied in this case, violate the constitutional requirement that taxation be equal and uniform. Accordingly, the trial court erred in concluding otherwise.

Valerus's first issue is sustained.

## TAXABLE SITUS

In its second issue, Valerus claims that the trial court erred in declaring that taxable situs of the forty-three compressors in dispute lay in Reeves and Loving Counties. We disagree.

### *Applicable Law*

Although not identified as such in the trial court's summary judgment, Section 21.02(a) of the Tax Code is the statutory basis for the trial court's conclusion that taxable situs lay in Reeves and Loving Counties. This statute, which codifies the so-called "mobilia" rule and its exceptions,[8] provides that:

> (a) [Except for certain inapplicable exceptions,] tangible personal property is taxable by a taxing unit if:
>
> (1) it is located in the unit on January 1 for more than a temporary period;

---

[8] *See Davis v. City of Austin*, 632 S.W.2d 331 (Tex. 1982).

(2) it normally is located in the unit, even though it is outside the unit on January 1, if it is outside the unit only temporarily;

(3) it normally is returned to the unit between uses elsewhere and is not located in any one place for more than a temporary period; or

(4) the owner resides (for property not used for business purposes) or maintains the owner's principal place of business in this state (for property used for business purposes) in the unit and the property is taxable in this state but does not have a taxable situs pursuant to Subdivisions (1) through (3) of this subsection.

TEX.TAX CODE ANN. § 21.02(a)(1)-(4)(West 2015); *see* TEX.CONST. art. VIII, § 11 (requiring that property be assessed for taxation and that taxes be paid in the county where it is situated).

As a general rule, courts presume that "the personalty in question has a tax situs within the taxing unit's jurisdiction." *Davis*, 632 S.W.2d at 335. To rebut this presumption, the taxpayer must present evidence that the property has not acquired situs in the jurisdiction and the taxpayer is not domiciled there, or that the property has acquired situs outside the tax authority's boundaries, or that a statute directs the property be taxed elsewhere. *Id.* Otherwise, the presumption becomes conclusive. *Id.*

### *Discussion*

Valerus have failed to rebut the presumption that, on January 1, 2012, taxable situs of the forty-three compressors in dispute lay in Reeves and Loving Counties.

Valerus does not contend that Reeves and Loving Counties cannot tax the compressors because it neither conducts business nor maintains facilities in these counties. In fact, Valerus admitted in a supplement to its summary judgment motion that it "does not maintain a storage yard let alone have a business address anywhere in Loving County."

Although Valerus asserts on appeal that the compressors "are temporarily stationed in Reeves and Loving Counties," and that it "does not intend for its compressor[s] . . . to permanently

18

remain there," Valerus does not argue that the compressors were not located in these counties for a sufficient amount of time to comply with the requirements of Section 21.02(a). In advancing this argument, Valerus does not claim that the compressors acquired situs outside Loving and Reeves Counties because the compressors were located in other taxing jurisdictions for more than a temporary period.

To the contrary, Valerus argues that fixing situs in accordance with Section 21.02(a) would be financially and logistically impractical for both dealers of heavy equipment and taxing authorities in light of the transitory nature of the compressors and "the imprecision of the term 'temporary.'" According to Valerus, adhering to Section 21.02(a) could lead to taxation at any of the locations outlined in the statute. Valerus asserts that this uncertainty need not exist for heavy equipment inventory because Section 23.1241(f) and the conforming administrative form promulgated by the comptroller fix situs at the dealer's principal place of business. Proceeding under this theory, Valerus maintains that taxable situs of the forty-three compressors in dispute lies in Harris County because this is the location of its principal place of business. Valerus is mistaken.

Nothing in Section 23.1241(f) refers to taxable situs. The statutory language does not unambiguously direct that heavy equipment inventory be taxed at the business address of each location at which the dealer conducts business. Indeed, the statute does not even mandate that the dealer file the form with the appraisal district in which the inventory's business location is situated. So far as "business location" is concerned, Section 23.1241(f) fails to define this term and to distinguish between a dealer's principal place of business and other business locations. Nor, as one of our sister courts noted in analyzing this statute, does it "provide instruction for a business to

19

determine where, among different counties, it must pay taxes." *Valerus Compression Servs. v. Gregg Cnty. Appraisal Dist.*, 457 S.W.3d 520, 526 (Tex.App.--Tyler 2015, no pet.). Section 23.1241(f) merely directs a dealer of heavy equipment to file an inventory declaration form and identifies the information that the dealer must report to the taxing authorities:

> The comptroller by rule shall adopt a dealer's heavy equipment inventory declaration form. Except as provided by Section 23.1242(k), not later than February 1 of each year, or, in the case of a dealer who was not in business on January 1, not later than 30 days after commencement of business, each dealer shall file a declaration with the chief appraiser and file a copy with the collector. The declaration is sufficient to comply with this subsection if it sets forth:
>
> (1) the name and business address of each location at which the declarant conducts business;
>
> (2) a statement that the declarant is the owner of a dealer's heavy equipment inventory; and
>
> (3) the market value of the declarant's heavy equipment inventory for the current tax year as computed under Subsection (b).

TEX.TAX CODE ANN. § 23.1241(f).

Likewise, nothing in the form promulgated by the state comptroller, Form 50-265, refers to taxable situs. *See* Dealer's Heavy Equipment Inventory Declaration, http://www.comptroller.texas.gov/taxinfo/taxforms/50-265.pdf. Labeled "Dealer's Heavy Equipment Inventory Declaration," this form does not direct that heavy equipment inventory be taxed at the business address of each location at which the dealer conducts business. *See id.* Nor does it identify where taxes are to be paid. *See id.* Significantly, the form does not contain any information whatsoever helpful in determining taxable situs under Section 23.1241(f). *See id.* Due to these shortcomings, Form 50-265, according to the Tyler Court of Appeals, "cannot be considered the comptroller's construction of Section 23.1241(f)." *Valerus*, 457 S.W.3d at 525.

20

In essence, the form "is nothing more than a form[:]"

> [R]equir[ing] the dealer's name, mailing address, and the 'name and physical business address of the business location of the inventory' . . . [and] instruct[ing] dealers to attach a list with the name and business address of each location at which it conducts business . . . [and] to provide the number of units for the business location and a breakdown of sales, leases, and rental amounts for the previous twelve month period.

*Id.*, *citing* Dealer's Heavy Equipment Inventory Declaration, http://www.comptroller.texas.gov/taxinfo/taxforms/50-265.pdf.

Notwithstanding that neither Section 23.1241(f) nor Form 50-265 unambiguously directs that heavy equipment inventory be taxed at the business address of each location at which the declarant conducts business, Valerus insists that "both the form and the statute indicate that the 'business location' is the appropriate tax situs for a dealer's heavy equipment inventory." Valerus asserts that situs cannot lie elsewhere because "[t]ethering the heaving [sic] equipment inventory's situs to the tax declarant's principal place of business" promotes "the [l]egislative aims of compliance, predictability, and administrative ease." This policy argument, while superficially appealing, fails to prove that, as a matter of law, Section 23.1241(f) prevails over Section 21.02 given that the very purpose of Section 21.02 is to determine taxable situs of tangible personal property and nothing in Section 23.1241(f) refers to taxable situs.

Valerus has not demonstrated that the legislature intended to fix taxable situs at a dealer's business location. Accordingly, the trial court did not err in concluding that taxable situs of the forty-three compressors in dispute lay in Reeves and Loving Counties, not Harris County. *See EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, No. 14-14-00268-CV, 2015 WL 5025534, at *6-*7 (Tex.App.--Houston [14th Dist.] Aug. 25, 2015, no pet.h.)(holding that Section 23.1241(f) does not address the taxable situs of heavy equipment inventory); *Valerus*, 457 S.W.3d

21

at 523-27 (same).[9]

Valerus's second issue is overruled.

## CONCLUSION

The portion of the trial court's judgment declaring that Sections 23.1241 and 23.1242 are unconstitutional as applied to Valerus's compressors is reversed, and judgment is rendered that these two statutes are not unconstitutional as applied in this case.   In all other respects, the trial court's judgment is affirmed.

September 23, 2015

                                                    YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

---

[9] Appellees, in a letter brief to the Court, posits that *EXLP v. Galveston* stands for the proposition the application of Section 23.1241 does not "result in a reasonable market value[.]"   However, the *EXLP* court did not reach the constitutionality issue of Section 23.1241 and Section 23.1242, but rather concludes that neither party carried "their respective summary judgment burden[.]"   *EXLP*, 2015 WL 5025534, at *1.   The case was remanded to the trial court for "further proceedings on the constitutionality of sections 23.1241 and 23.1242 as applied to the compression unit rental inventories at issue" because the trial court had "insufficient information to determine as a matter of law" that the statute's method of calculation "was not 'based on the[ir] reasonable market value.'"   *EXLP*, 2015 WL 5025534, at *5-*6, *citing Enron*, 922 S.W.2d at 935.